1    WILLIAM W. OXLEY (SBN 136793)
Woxley@orrick.com
2    MEGHAN ROHLING KELLY (SBN 292236)
Meghan.kelly@orrick.com
3    ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Ave., Suite 2700
4    Los Angeles, CA  90071
Telephone:  213-629-2020
5    Facsimile:   213-612-2499

6    Attorneys for Defendant
THE GOLDMAN SACHS GROUP, INC.

7

8               UNITED STATES DISTRICT COURT

9               CENTRAL DISTRICT OF CALIFORNIA

10

11    CATHERINE A. BLEVINS, an
individual; BARBARA BRYSON, an
12    individual; ALICE M. CARRIGAN, an
individual; THERESA CARTER, an
13    individual; JUDY CEJA, an individual;
GUADALUPE CEJA, an individual;
14    VERONICA DAVILA, an individual;
TERRY DEATON, an individual;
15    JUSTINE DELLAVECCHIA, an
individual; APRIL EVANS, an
16    individual; MARIAN EVANS, an
individual; PATRICIA A. EVANS, an
17    individual; ANDREA M. FIGUEROA,
an individual; JEFF GERHART, an
18    individual; NORMAN HALSTEAD, an
individual; DELFINA HARRELL, an
19    individual; ALEXANDRA HENDLEY,
an individual; JAMES HOOD, an
20    individual; BRIANNA HOODY, an
individual; BROOKLYN HOODY, an
21    individual; ERICA JACKSON, an
individual; DOROTHY ANN
22    JACKSON, an individual; SEAN E.
MACDONALD, an individual;
23    SANDRA MARTIN, an individual;
DANIELA NATALE, an individual;
24    JOHN NATALE, an individual;
CARLOS OZUNA, an individual;
25    HELEN OZUNA, an individual; BRYAN
DOUGLAS POWERS, an individual;
26    ILEAN SANCHEZ, an individual; and
LISA R. SOLLARS, an individual,

27

28

Case No. 5:22-CV-01866

**DEFENDANT THE GOLDMAN SACHS GROUP, INC.'S NOTICE OF REMOVAL**

1          Plaintiffs,

2          vs.

3     SYNAGRO TECHNOLOGIES, INC., a
      Delaware corporation, THE
4     GOLDMAN SACHS GROUP, INC., a
      Delaware corporation, SYNAGRO-
5     WWT, INC., a Maryland corporation,
      NURSERY PRODUCTS LLC, a
6     California limited liability company, and
      DOES 1-100, inclusive,
7
          Defendants.
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT THE GOLDMAN SACHS GROUP, INC.'S NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Defendant The Goldman Sachs Group, Inc. ("GS Group") files this Notice of Removal pursuant to 28 U.S.C. §§ 1332(a), 1441(a), and 1446(b) to effect the removal of the above-captioned action, which was commenced in the Superior Court of California, San Bernardino County. Every named defendant has consented to GS Group's filing of this Notice of Removal, which is proper for the reasons stated below.[1]

## BACKGROUND

1.      On August 4, 2022, Plaintiff Catherine A. Blevins and 30 other plaintiffs ("Plaintiffs") filed a complaint in the Superior Court of California, San Bernardino County. Ex. A at 14 ("Complaint").

2.      The Complaint asserts the following causes of action: (1) Negligence, (2) Strict Liability for Ultrahazardous Activity, (3) Trespass, (4) Public Nuisance, and (5) Private Nuisance. Complaint ¶¶ 50-105.

3.      Specifically, Plaintiffs allege that defendants GS Group, Synagro Technologies, Inc. ("Synagro Technologies"), Synagro-WWT, Inc. ("Synagro-WWT"), Nursery Products LLC ("Nursery Products"), and Does 1 through 100 (collectively, "Defendants") all "owned, operated and continue to operate a sewage composting facility known as the Nursery Products Hawes Composting Facility" ("the Facility"). Complaint ¶ 2.

4.      Plaintiffs allege that Defendants operated the Facility in an unreasonable, unsafe, and dangerous condition by failing to comply with state and county regulations regarding the processing of unpermitted forms of waste, allowing waste and litter to accumulate at the facility, and engaging in unpermitted off-site dumping. Complaint ¶ 3. Plaintiffs contend that Defendants continued to engage in the aforementioned conduct despite being aware that it posed a "continuous threat, annoyance, nuisance, and harm to the public." *Id.* ¶ 4.

---

[1] By filing this notice of removal, GS Group does not waive, and specifically preserves, all arguments and defenses to the Complaint, including those arising from personal jurisdiction.

5.     Plaintiffs also allege that, as a result of this conduct, a fire began at the facility on or around May 28, 2022, causing the facility to emit "smoke, noxious or offensive gases, odors, pollutants, toxins, physical or particulate matter, contaminants and/or chemicals" within a 25-mile radius of the Facility. Complaint ¶ 5.

6.     Goldman Sachs was served through its agent for service of process on September 22, 2022. A copy of the Complaint, Summons, and Civil Case Cover Sheet are attached hereto as Exhibit A to this notice. Therefore, this Notice of Removal is timely under the 30-day removal period. 28 U.S.C. § 1446(b); Fed. R. Civ. P. 6(a)(1)(C).

## DIVERSITY OF CITIZENSHIP

7.     Goldman Sachs removes this action based on 28 U.S.C. §§ 1332(a), 1441(a), and 1446(b). Section 1332 gives this Court original jurisdiction over civil actions between citizens of different States where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).

8.     The diversity requirement is satisfied where no party properly joined and served as a defendant is a citizen of the same State as any plaintiff. 28 U.S.C. §§ 1332(a)(1), 1441(b)(2). Here, Plaintiffs are citizens of the forum State (California) and no defendant is a citizen of that State.

9.     **Plaintiffs' Citizenship:** Plaintiffs allege that they are all citizens and residents of the State of California. Complaint ¶¶ 7, 46. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place where he or she resides with the intention to remain or to which he or she intends to return. *Kanter v. Warner-Lambert Co*., 265 F.3d 853, 857 (9th Cir. 2001). Plaintiffs allege that they reside in the State of California. Goldman Sachs therefore also alleges that Plaintiffs are citizens of the State of California.

10.     **Defendants' Citizenship:** A corporation is deemed a citizen in every state in which it is incorporated and the State in which it has its primary place of business. 28 U.S.C. § 1332(c)(1); *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). In contrast, a limited liability company "is a citizen of every state of which its owners/members are citizens." *Id.* The Supreme Court has "consistent[ly] refus[ed] to extend the corporate citizenship rule to non-corporate entities, including those," like limited liability companies, "that share some of the characteristics of corporations." *Id.*

11.     Goldman Sachs is alleged in the Complaint to be a Delaware corporation with its principal place of business in New York, New York. Complaint ¶ 10. Goldman Sachs therefore also alleges these facts. Accordingly, Goldman Sachs is deemed a citizen of Delaware and New York for the purposes of establishing diversity jurisdiction.

12.     Synagro Technologies is a Delaware corporation with its principal place of business in Baltimore, Maryland. Decl. of Elizabeth Grant ("Grant Decl."), ¶ 2; *see also* Complaint ¶ 11 (alleging same facts). Accordingly, Synagro Technologies is deemed a citizen of Delaware and Maryland for the purposes of establishing diversity jurisdiction.

13.     Synagro-WWT is a Maryland corporation with its principal place of business in Baltimore, Maryland. Grant Decl. ¶ 3; *see also* Complaint ¶ 12 (alleging same facts). Accordingly, Synagro-WWT is deemed a citizen of Maryland for the purposes of establishing diversity jurisdiction.

14.     Nursery Products is alleged in the Complaint to be a California limited liability company with its principal place of business in Helendale, California. Complaint ¶ 13. However, the Complaint fails to identify Nursery Products' members and allege their citizenship. *See id.*; *see also Johnson*, 437 F.3d at 896-97, 899 (the citizenship of an LLC for diversity purposes is determined by the citizenship of its members, rather than the state(s) in which the LLC is organized);

*De Leon v. Aurora Loan Servs.*, No. cv-09-8389, 2009 WL 5065254, at *1 (C.D. Cal. Dec. 15, 2009) ("To establish the citizenship of a limited liability company, Defendant must, at a minimum, allege the citizenship of all members of the limited liability company."). The sole member-owner of Nursery Products is Synagro-WWT, Inc., which, as explained above, is a Maryland corporation. Grant Decl. ¶ 4; Decl. of Meghan Rohling Kelly, Ex. 1. Therefore, Nursery Products is deemed a citizen of Maryland for the purposes of establishing diversity jurisdiction.

15.    **Doe Defendants' Citizenship:** The citizenship of fictitiously named defendants is disregarded when establishing diversity jurisdiction under 28 U.S.C. § 1332. *See* 28 U.S.C. § 1441(a); *see also Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir. 1989).

## THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

16.    The notice of removal may assert the amount in controversy where the complaint seeks nonmonetary relief, or where a money judgment is sought but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded. 28 U.S.C. § 1446(c)(2)(A). Removal is proper on the basis of the asserted amount if the Court finds by a preponderance of the evidence that the amount in controversy for an individual plaintiff, including attorney's fees, would exceed $75,000. 28 U.S.C. § 1446(c)(2)(B); *Urbino v. Orkin Servs. of California, Inc.*, 726 F.3d 1118, 1122 (9th Cir. 2013); *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). When the amount in controversy is not "'facially apparent'" from the complaint, "the court may consider facts in the removal petition" to determine the potential damages at issue. *Kroske*, 432 F.3d at 980 (quoting *Singer v. State Farm Mut. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). The preponderance burden is satisfied where the defendant's calculations are conservative, made in good faith, and based on evidence wherever possible. *See Behrazfar v. Unisys Corp.*, 687 F.Supp.2d 999, 1004 (C.D. Cal. 2009).

17.    In this proposed civil action, Plaintiffs' prayer for relief includes nonmonetary relief. Complaint p. 25 (seeking injunctive relief in the form of "an order directing Defendants to comply with California law" as well as "other equitable relief"). Furthermore, under California law, a plaintiff may recover damages in excess of the amount demanded. *Greenup v. Rodman*, 42 Cal.3d 822, 827 (1986) ("[T]he court is not bound by the demand of the complaint, but may award any relief consistent with the case made by the plaintiff."); Cal. Code of Civ. Proc. § 580(a). GS Group may therefore assert the amount in controversy in its notice of removal.

18.    Although the Complaint fails to demand a specific sum, the amount in controversy for each plaintiff is likely to exceed $75,000. Goldman Sachs provides the following analysis of potential damages (without admitting liability or that any Plaintiff is entitled to the relief sought) based on the allegations in Plaintiffs' Complaint in order to demonstrate that the Complaint would put into controversy a sufficient amount as to warrant removal under 28 U.S.C. § 1332(a).[2]

19.    Plaintiffs seek monetary compensation for, among other things, "property damage," "loss of use, benefit, goodwill, diminution in value and/or enjoyment of their property," "loss of income" and other consequential economic losses, and "emotional distress, anguish, anxiety, and nervousness" that allegedly resulted from the aforementioned conditions at the Facility described in the Complaint. Complaint ¶¶ 9, 49, 64, 77, 86.

20.    Plaintiffs also seek to recover monetary compensation for medical expenses and medical monitoring expenses resulting from Defendants' alleged conduct. Complaint ¶¶ 9, 49, 64 77, 86. The Complaint alleges that Plaintiffs suffered from injuries "including but not limited to breathing problems, chest tightness, burning eyes, headaches, nausea, sinus issues, coughing and/or a myriad of other illnesses." Complaint ¶ 6.

---

[2] GS Group reserves the right to deny Plaintiffs' allegations in their entirety.

21.     Additionally, Plaintiffs contend they are entitled to punitive damages "in an amount appropriate to punish and set an example of Defendants." Complaint ¶ 66. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) ("It is well established that punitive damages are part of the amount in controversy in a civil action.").

22.     Based on the alleged facts underlying Plaintiffs' claims and similar cases heard by federal district courts in the State of California, GS Group conservatively estimates that the amount in controversy significantly exceeds $75,000 for each individual plaintiff. *See, e.g.*, *Schaeffer v. Gregory Village Partners L.P.*, No. 3:13-cv-04358, 2015 WL 10553230 (N.D. Cal. Nov. 23, 2015) (awarding two plaintiffs $706,500 for contaminated air, soil, and water under theories including public nuisance, private nuisance, trespass, negligence, and ultrahazardous activity); *Walnut Creek Manor, LLC v. Mayhew Ctr., LLC*, No. 4:07-cv-05664, 2009 WL 3260096 (N.D. Cal. June 1, 2009) (one plaintiff awarded $1,947,000 under theories of private nuisance, public nuisance, trespass, negligence, negligence per se, and strict liability after jury found that harmful chemicals were released from defendant's property); *N. Cal. River Watch v. Waste Mgmt. Inc.*, No. 08-cv-01686, 2008 WL 7390626 (N.D. Cal. Oct. 20, 2008) (defendant enjoined and compelled to pay $100,000 in attorney's fees after improperly disposing of hazardous waste); *Stanton Rd. Assocs. v. Lohrey Enters.*, No. C890947, 1991 WL 632301 (N.D. Cal. Apr. 15, 1991) (one plaintiff awarded $389,925 in consequential damages and $126,198 in attorney's fees after the defendant's commercial dry-cleaning business contaminated neighboring property owned by plaintiff).

23.     A conservative estimate of the damages associated with Plaintiffs' claims satisfies the $75,000 minimum without addressing potential attorneys' fees, which have historically amounted to over $100,000 in similar cases. *See, e.g.*, *Stanton Rd. Assocs.*, 1991 WL 632301 ($126,198 in attorney's fees). Following

from the above analysis, the amount-in-controversy requirement under 28 U.S.C. § 1332(a) is easily satisfied here, even before the Court factors in Plaintiffs' request for punitive damages.

## **VENUE**

24.   Venue is proper in the Eastern Division of the Central District of California pursuant to 28 U.S.C. §§ 84(c), 1391, and 1446(a). This action was originally brought in the Superior Court of California, San Bernardino County, located in the Central District's Eastern Division. 28 U.S.C. § 84(c)(1). Furthermore, the complaint alleges that the events giving rise to the action occurred in San Bernardino, California. Complaint ¶ 23.

## **NOTICE OF REMOVAL**

25.   This Notice of Removal shall be served promptly on Plaintiffs' Counsel of Record and filed with the Clerk of the Superior Court of California, San Bernardino County.

26.   In compliance with 28 U.S.C. § 1446(a), attached hereto as Exhibit A to this notice are copies of all state-court papers served herein, including the Complaint and Summons.

27.   As stated above, all Defendants have consented to GS Group's filing of this Notice of Removal.

Dated:      October 24, 2022               ORRICK, HERRINGTON &
                                           SUTCLIFFE LLP


                                           By:____s/  *Meghan Rohling Kelly*____
                                               MEGHAN ROHLING KELLY
                                                 Attorney for Defendant
                                           THE GOLDMAN SACHS GROUP, INC.

9

# Exhibit A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

SYNAGRO TECHNOLOGIES INC., a Delaware corporation,
(Additional Parties Attachment Form is Attached)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

CATHERINE A. BLEVINS, an individual;  (Additional Parties
Attachment Form is Attached)

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

SEP 19 2022

BY *Brian Summers*
DEPUTY

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* San Bernardino County Superior Court<br>San Bernardino District – Civil Division, 247 West Third Street, San Bernardino CA 92415 | CASE NUMBER:<br>*(Número del Caso):* CIVSB **2 2 1 6 8 9 8** |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Natasha N. Serino, Esq., 16870 West Bernardo Drive, Suite 400, San Diego, CA 92127 (858) 485-6535

| | | |
|---|---|---|
| DATE:<br>*(Fecha)* SEP 19 2022 | Clerk, by<br>*(Secretario)* *Brian Summers* | , Deputy<br>*(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
[SEAL]

COPY

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* GOLDMAN SACHS GROUP, INC., a Delaware corporation

   under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☒ by personal delivery on *(date):* 9/20/2022

**Page 1 of 1**

| | |
|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>*www.courtinfo.ca.gov* |

Date Served: 9/20/2022
Time Served: SB  769730391
Server:

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| Catherine A. Blevins, et al. v. Synagro Technologies, Inc., et al. | CIV SB 22 16 8 9 8 |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

[✓] Plaintiff    [ ] Defendant    [ ] Cross-Complainant    [ ] Cross-Defendant

BARBARA BRYSON, an individual; ALICE M. CARRIGAN, an individual; THERESA CARTER, an individual; JUDY CEJA, an individual; GUADALUPE CEJA, an individual; VERONICA DAVILA, an individual; TERRY DEATON, an individual; JUSTINE DELLAVECCHIA, an individual; APRIL EVANS, an individual; MARIAH EVANS, an Individual; PATRICIA A. EVANS, an individual; ANDREA M. FIGUEROA, an individual; JEFF GERHART, an individual; NORMAN HALSTEAD, an individual; DELFINA HARRELL, an individual; ALEXANDRA HENDLEY, an individual; JAMES HOOD, an individual; BRIANNA HOODY, an individual; BROOKLYN HOODY, an individual; ERICA JACKSON, an individual; DOROTHY ANN JACKSON, an individual; SEAN E. MACDONALD, an individual; SANDRA MARTIN, an individual; DANIELA NATALE, an individual; JOHN NATALE, an individual; CARLOS OZUNA, an individual; HELEN OZUNA, an individual; BRYAN DOUGLAS POWERS, an individual; ILEAN SANCHEZ, an individual; and LISA R. SOLLARS, an individual,

Page   1   of   2

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

SUM-200(A)

| SHORT TITLE:<br>Catherine A. Blevins, et al. v. Synagro Technologies, Inc., et al. | CASE NUMBER:<br>CIV SB 2 2 16 8 9 3 |
|---|---|

## INSTRUCTIONS FOR USE

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
➜ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff ☑ Defendant ☐ Cross-Complainant ☐ Cross-Defendant

GOLDMAN SACHS GROUP, INC., a Delaware corporation, SYNAGRO-WWT, INC., a Maryland corporation, NURSERY PRODUCTS LLC, a California limited liability company and DOES 1-100, inclusive,

Page 2 of 2

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

1   Gregory J. Hout, Esq.
    LAW OFFICES OF GREGORY J. HOUT
2   12396 World Trade Drive
    Suite 206
3   San Diego, CA 92128
4   Tel: (858) 946-6658
    Fax: (858) 946-6659
5   ghout@houtlaw.com

6   Alexander M. Schack, Esq., Bar No. 99126
7   Natasha N. Serino, Esq., Bar No. 284711
    Shannon F. Nocon, Esq., Bar No. 316523
8   SCHACK LAW GROUP
    16870 West Bernardo Drive, Suite 400
9   San Diego, CA 92127
    Tel: (858) 485-6535 Fax: (858) 485-0608
10  alexschack@schacklawgroup.com
11  natashaserino@schacklawgroup.com
    shannonnocon@schacklawgroup.com
12
    Attorneys for Plaintiffs
13

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

AUG 0 4 2022

By Brian Summers
           Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN BERNARDINO

| | |
|---|---|
| CATHERINE A. BLEVINS, an individual; BARBARA BRYSON, an individual; ALICE M. CARRIGAN, an individual; THERESA CARTER, an individual; JUDY CEJA, an individual; GUADALUPE CEJA, an individual; VERONICA DAVILA, an individual; TERRY DEATON, an individual; JUSTINE DELLAVECCHIA, an individual; APRIL EVANS, an individual; MARIAH EVANS, an Individual; PATRICIA A. EVANS, an individual; ANDREA M. FIGUEROA, an individual; JEFF GERHART, an individual; NORMAN HALSTEAD, an individual; DELFINA HARRELL, an individual; ALEXANDRA HENDLEY, an individual; JAMES HOOD, an individual; BRIANNA HOODY, an individual; BROOKLYN | Case No.: CIV SB 2216890<br>Dept:<br>Judge:<br>Action Filed:<br><br>**COMPLAINT FOR:**<br><br>1.  **Negligence**<br>2.  **Strict Liability for Ultrahazardous Activity**<br>3.  **Trespass**<br>4.  **Public Nuisance**<br>5.  **Private Nuisance**<br><br>**DEMAND FOR JURY TRIAL** |



- 1 -

HOODY, an individual; ERICA JACKSON, an individual; DOROTHY ANN JACKSON, an individual; SEAN E. MACDONALD, an individual; SANDRA MARTIN, an individual; DANIELA NATALE, an individual; JOHN NATALE, an individual; CARLOS OZUNA, an individual; HELEN OZUNA, an individual; BRYAN DOUGLAS POWERS, an individual; ILEAN SANCHEZ, an individual; and LISA R. SOLLARS, an individual,

Plaintiffs,

v.

SYNAGRO TECHNOLOGIES INC., a Delaware corporation, GOLDMAN SACHS GROUP, INC., a Delaware corporation, SYNAGRO-WWT, INC., a Maryland corporation, NURSERY PRODUCTS LLC, a California limited liability company and DOES 1-100, inclusive,

Defendants.

Plaintiffs CATHERINE A. BLEVINS, an individual; BARBARA BRYSON, an individual; ALICE M. CARRIGAN, an individual; THERESA CARTER, an individual; JUDY CEJA, an individual; GUADALUPE CEJA, an individual; VERONICA DAVILA, an individual; TERRY DEATON, an individual; JUSTINE DELLAVECCHIA, an individual; APRIL EVANS, an individual; MARIAH EVANS, an Individual; PATRICIA A. EVANS, an individual; ANDREA M. FIGUEROA, an individual; JEFF GERHART, an individual; NORMAN HALSTEAD, an individual; DELFINA HARRELL, an individual; ALEXANDRA HENDLEY, an individual; JAMES HOOD, an individual; BRIANNA HOODY, an individual; BROOKLYN HOODY, an individual; ERICA JACKSON, an individual; DOROTHY ANN JACKSON, an individual; SEAN E. MACDONALD, an individual; SANDRA MARTIN, an individual; DANIELA NATALE, an

- 2 -

COMPLAINT

15

1  individual; JOHN NATALE, an individual; CARLOS OZUNA, an individual; HELEN OZUNA, an

2  individual; BRYAN DOUGLAS POWERS, an individual; ILEAN SANCHEZ, an individual; and

3  LISA R. SOLLARS, an individual (hereinafter referred to as "Plaintiffs"), by and through their

4  undersigned counsel and on behalf of themselves and all others similarly situated, bring this action

5  against Defendants SYNAGRO TECHNOLOGIES INC., GOLDMAN SACHS GROUP, INC.,

6  NURSERY PRODUCTS LLC, SYNAGRO-WWT, INC. and DOES 1 through 100, inclusive

7  (hereinafter collectively referred to as "Synagro", "Synagro Technologies" or "Defendants") and

8  allege as follows:

9  **INTRODUCTION**

10      1.     Plaintiffs Catherine A. Blevins, Barbara Bryson, Alice M. Carrigan, Theresa Carter,

11  Judy Ceja, Guadalupe Ceja, Veronica Davila, Terry Deaton, Justine Dellavecchia, April Evans,

12  Mariah Evans, Patricia A. Evans, Andrea M. Figueroa, Jeff Gerhart, Norman Halstead, Delfina

13  Harrell, Alexandra Hendley, James Hood, Brianna Hoody, Brooklyn Hoody, Erica Jackson,

14  Dorothy Ann Jackson, Sean E. MacDonald, Sandra Martin, Daniela Natale, John Natale, Carlos

15  Ozuna, Helen Ozuna, Bryan Douglas Powers, Ilean Sanchez, and Lisa R. Sollars, residents of San

16  Bernardino County, bring this action against Defendants and DOES 1 through 100, in connection

17  with Defendants' ownership and operation of a waste facility where they allowed dangerous

18  conditions to persist that caused the release of smoke, noxious or offensive gases, odors, pollutants,

19  physical or particulate matter, toxins, contaminants and/or chemicals into the area surrounding the

20  facility.

21      2.     At all times relevant hereto, Defendants have owned, operated and continue to

22  operate a sewage composting facility known as the Nursery Products Hawes Composting Facility

23  located at or near W/SW Hwy 58 Helendale Road, Hinkley, CA 93516 (hereinafter the "Facility" or

24  "Nursery Products Hawes Composting Facility"). The Facility consists in part of an open-air pit to

25  compost two forms of waste from across Southern California: biosolids (which are semi-cleaned

26  organic sewage such as human feces) and green materials (such as grass clippings).

27

28  - 3 -

1       3.     As further alleged herein, Defendants have operated the Facility in an unreasonable,

2  unsafe and dangerous condition. At all times relevant hereto, the Facility has been out of

3  compliance with State and County regulations and contained dangerous conditions that posed a

4  foreseeable risk of harm to Plaintiffs. Among other things, the Facility has repeatedly accepted

5  excessive waste tonnage beyond the daily maximum in violation of 14 Cal. Code. Regs. § 17867,

6  processed unpermitted forms of waste, allowed waste and litter to accumulate on its property, and

7  engaged in unpermitted off-site dumping.

8       4.     The conditions at the Facility were inherently dangerous, created sanitary risks, and

9  pose a continuous threat, annoyance, nuisance and harm to the public. Despite knowledge of the

10  dangerous conditions that existed at the waste Facility, Defendants failed to disclose this

11  information to Plaintiffs or the public. Defendants also failed to take any steps to correct the

12  conditions. As a result, the foreseeable risks created by the Facility, which were known to or created

13  by Defendants, materialized in May 2022, causing significant harm to Plaintiffs.

14       5.     On or around May 28, 2022, an uncontrolled fire began at the Facility.  As result of

15  said fire and the other dangerous conditions at the Facility, the Facility has and continues to emit

16  smoke, noxious or offensive gases, odors, pollutants, toxins, physical or particulate matter,

17  contaminants and/or chemicals within at least a 25-mile radius surrounding the Nursery Products

18  Hawes Composting Facility.

19       6.     As a result of Defendants' conduct, which was a substantial factor in causing the fire

20  and the emanation of substances listed herein, Plaintiffs have suffered damages. These damages

21  include but are not limited to property damage, personal injury and/or the loss of use and enjoyment

22  of their property. In addition, Plaintiffs have been subjected to noxious air from pollutants,

23  chemicals, particulate matter, contaminants and toxins caused by the fire and by Defendants' failure

24  to maintain the Facility in a reasonably safe condition. The exposure to the smoke, noxious or

25  offensive gases, odors, pollutants, toxins, physical or particulate matter, contaminants and/or

26  chemicals, has caused significant injuries to Plaintiffs including but not limited to breathing

27

28                                 - 4 -

1 | problems, chest tightness, burning eyes, headaches, nausea, sinus issues, coughing and/or a myriad
2 | of other illnesses. Conditions are so bad that at times there has also been ash and particulate matter
3 | falling from the sky. Accordingly, Plaintiffs seek relief and bring this Complaint against Defendants
4 | for the conduct alleged herein.

5 | **PARTIES**

6 |     7.    Plaintiffs Catherine A. Blevins, Barbara Bryson, Alice M. Carrigan, Theresa Carter,
7 | Judy Ceja, Guadalupe Ceja, Veronica Davila, Terry Deaton, Justine Dellavecchia, April Evans,
8 | Mariah Evans, Patricia A. Evans, Andrea M. Figueroa, Jeff Gerhart, Norman Halstead, Delfina
9 | Harrell, Alexandra Hendley, James Hood, Brianna Hoody, Brooklyn Hoody, Erica Jackson,
10 | Dorothy Ann Jackson, Sean E. MacDonald, Sandra Martin, Daniela Natale, John Natale, Carlos
11 | Ozuna, Helen Ozuna, Bryan Douglas Powers, Ilean Sanchez, and Lisa R. Sollars are California
12 | citizens who own, reside at, and/or occupy property within 25 miles of the Nursery Products Hawes
13 | Composting Facility, located at W/SW Highway 58 Helendale Road, Hinkley, CA 92516 (the
14 | "Facility") in San Bernardino County, California.

15 |     8.    The exact names and capacities in which Plaintiffs are suing may be presently
16 | unknown and therefore Plaintiffs bring this action in their capacities as individuals, trustees,
17 | executors, officers, guardians ad litem, members, shareholders, heirs, survivors, and principals, as
18 | may be applicable.

19 |     9.    As alleged and described in detail herein, Plaintiffs have suffered nuisance, property
20 | damage, personal injury, medical expenses, loss of use and enjoyment of their property, loss of
21 | income, loss of earning capacity, mental distress or anguish, annoyance, discomfort, and
22 | inconvenience, and/or other damages as a result of Defendants' failure to operate the Facility in a
23 | reasonably safe manner, which resulted in the ignition of a hazardous and ongoing fire. Defendants
24 | conduct has emitted smoke, noxious or offensive gases, odors, pollutants, physical or particulate
25 | matter, toxins, contaminants and/or chemicals where Plaintiffs reside.

26
27
28

- 5 -

1        10.     Defendant Goldman Sachs Group, Inc. ("Goldman Sachs") is a Delaware corporation

2  with its principal place of business in New York, New York. Defendant Goldman Sachs is a global

3  financial institution and purchased Synagro Technologies, Inc. in 2020. Defendant Goldman Sachs,

4  by and through Synagro Technolgoies, Inc. and/or its subsidiaries, provides biosolids and organic

5  waste management services, including, but not limited to, at the Facility.

6        11.     Defendant Synagro Technologies, Inc., is a Delaware corporation with its principal

7  place of business in Baltimore, Maryland. Defendant Synagro Technologies, Inc. owns, manages,

8  and/or operates numerous subsidiaries including, but not limited to, Defendants Synagro-WWT, Inc.

9  and Nursery Products LLC, and provides biosolids and organic waste management services, including

10  at the Facility.

11        12.     Defendant Synagro-WWT, Inc. is a Maryland corporation with its principal place of

12  business in Baltimore, Maryland. Defendant Synagro-WWT, Inc. owns, manages, and/or operates

13  numerous subsidiaries including, but not limited to, Defendant Nursery Products LLC, and provides

14  biosolids and organic waste management services, including at the Facility.

15        13.     Defendant Nursery Products LLC is a California limited liability company with its

16  principal place of business in Helendale, California and is managed and/or owned by Defendant

17  Synagro-WWT, Inc. Defendant Nursery Products LLC provides waste disposal services, including,

18  but not limited to, cleaning, transforming, reusing and recycling services and owns and operates

19  Nursery Products Hawes Composting Facility, located at W/SW Highway 58 Helendale Road,

20  Hinkley, CA 92516 (the Facility).

21        14.     The true names and capacities of defendants DOES 1 through 100, whether individual,

22  corporate, associate, representative, are unknown to Plaintiffs who therefore sue said defendants by

23  such fictitious names pursuant to California Code of Civil Procedure Section 474. Plaintiffs will

24  amend this Complaint to allege the true names and capacities of DOES 1 through 100 when Plaintiffs

25  have such information. Plaintiffs are informed and believe and thereon allege that each of the

26

27

28                               - 6 -

1  fictitiously named defendants is responsible in some manner for the occurrences and damages alleged
2  herein.

3        15.    Plaintiffs are informed and believe and thereon allege that, at all times mentioned, each
4  defendant, including DOES 1 through 100, was the agent, representative, alter ego, successor-in-
5  interest, affiliate, principal, partner, joint venture, co-conspirator, and/or employee of the other
6  defendants, and was acting within the course and scope of their agency and employment. As such,
7  each defendant was acting within the course and scope of its authority and with the express and/or
8  implied permission, knowledge, consent, and ratification of all other defendants when doing the acts
9  and omissions alleged herein.

10        16.    Plaintiffs are informed and believe and thereon allege that, at all times mentioned,
11  each of the Defendants, including DOES 1 through 100, acted in concert with each and every other
12  Defendant, intended to and did participate in the events, acts, practices and courses of conduct
13  alleged herein, and was a proximate cause of damage and injury thereby to Plaintiffs as alleged
14  herein. Defendants further failed to supervise other Defendant(s) and/or their employees, officers,
15  agents, successors-in-interest, affiliates, principals, partners, joint ventures, co-conspirators,
16  representatives, alter egos, and/or directors.

17                                      **JURISDICTION AND VENUE**

18        17.    This Court has jurisdiction over all causes of action asserted herein pursuant to the
19  California Constitution, Article VI, § 10 and California Code of Civil Procedure § 410.10.

20        18.    This court has personal jurisdiction over Defendants because, among other things,
21  Defendants regularly conduct business in California and operate the Facility in California. The
22  Defendants each own, operate, and/or control the Facility located in San Bernardino, California and
23  derive business and profits from their operation of the Facility and the services it provides. The
24  Facility is located "approximately 110 miles east of Los Angeles" and "is the closest and largest

25
26
27
28                                      - 7 -

1  biosolids recycling option for the five largest counties in California."[1] According to Defendants'

2  website, the Subject Facility serves at least 28 cities in California.[2]

3      19.    Defendant Goldman Sachs also maintains multiple California offices in San Francisco,

4  Los Angeles, Walnut Creek, Newport Beach, and Irvine, and employs and/or serves numerous

5  California employees and customers. Goldman Sachs further owns, controls, and/or operates

6  numerous subsidiaries that conduct business in California, including, but not limited to, Defendants

7  Synagro Technologies, Inc., Synagro-WWT, Inc., and Nursery Products LLC.

8      20.    Defendants Synagro Technologies, Inc. and Synagro-WWT, Inc. also own and operate

9  numerous fertilizer, compost, recycling, and/or waste facilities in California including, but not limited

10  to, Synagro Organic Fertilizer Company of Sacramento, Inc. in Elk Grove, California, South Kern

11  Compost Manufacturing Facility in Taft, California, Central Valley Composting in Dos Palos,

12  California, and the Facility located in Helendale, California.[3] These Defendants also maintain offices

13  throughout California and recruit California employees for work in Taft, Ontario, Rancho Cordova,

14  San Bernardino, Dos Palos, Helendale, San Francisco, California City, Elk Grove, Chino, Stockton,

15  Walnut Creek, Redwood City, San Rafael, Livermore, and Apple Valley, California. Defendant

16  Nursery Products LLC is a California limited liability company and a subsidiary of Defendants

17  Goldman Sachs, Synagro Technologies, Inc., and Synagro-WWT, Inc..

18      21.    Defendant Nursery Products LLC is a California limited liability company. It owns

19  and operates the Facility, employs numerous California employees, and derives business and profits

20  from its operation of the Facility and the services it provides.[4]

21      22.    By and through the business activities and contacts described herein, Defendants, and

22  each of them, have intentionally availed themselves of California's consumer and employee markets.

23

24

25

26  [1] https://www.synagro.com/locations/nursery-products/
    [2] *Ibid.*

27  [3] https://www.synagro.com/where-we-work/
    [4] https://www2.calrecycle.ca.gov/SolidWaste/Site/Summary/4630

28                                          - 8 -

1    Defendants have sufficient minimum contacts with this state to render the exercise of jurisdiction by

2    this Court in compliance with traditional notions of fair play and substantial justice.

3        23.    Venue is proper in this Court pursuant to California Code of Civil Procedure section

4    395 because the acts and injuries that gave rise to this action occurred in San Bernardino, California.

5    Venue is also proper in this Court pursuant to California Code of Civil Procedure section 395 because

6    this is the County in which Defendant Nursery Products LLC is located.

7                        **FACTUAL ALLEGATIONS**

8    A. **Defendants' Operation of a Dangerous Waste Facility and Their Violation of State**

9        **Regulations**

10       24.    Defendants operate a waste composting facility located at or near W/SW Hwy 58

11   Helendale Road, Hinkley, CA 93516 that is commonly known as Nursery Products Hawes

12   Composing Facility (collectively the "Facility" or "waste Facility"). The waste Facility, which spans

13   80 acres, is an open-air composting factory that takes in biosolids (i.e. certain forms of sewage) and

14   green waste to convert into compost and fertilizer.

15       25.    As part of their operation of the Nursery Products Hawes Composing Facility,

16   Defendants receive waste at the Facility and compost it in a large pit. Pursuant to State regulations,

17   however, Defendants are not authorized to accept more than 2,000 daily tons of solid waste.

18       26.    Due to the nature of the waste processed at the Facility and the contaminants

19   involved, Defendants' operation of the waste Facility is an ultrahazardous activity that involves the

20   handling, collection, storage, treatment, composting and containment of waste substances, human

21   feces, solid waste, sewage, green waste, biosolids and/or other substances containing unsafe

22   materials. If not operated in a reasonably safe manner, there is a foreseeable risk of harm to the

23   surrounding public, including but not limited to through the release of smoke, noxious or offensive

24   gases, odors, pollutants, toxins, physical or particulate matter, contaminants and/or chemicals.

25       27.    Since at least January 2022, Defendants have been operating the Facility in an

26   unreasonably dangerous manner.  This includes accepting excessive waste, failing to control fires at

27   the Facility, improperly dumping waste off site, putting mixed waste and unpermitted waste into the

28                                   - 9 -

1  composting pit, allowing waste and litter to gather on the property, processing unacceptable forms

2  of waste, and operating the Facility in a manner that causes smoke, noxious or offensive gases,

3  odors, pollutants, toxins, physical or particulate matter, contaminants and/or chemicals to emanate

4  into the surrounding area and enter the properties of Plaintiffs.

5       28.    As a result of Defendants' failure to operate the Facility in a reasonably safe manner,

6  the waste pit caught fire on or around May 28, 2022 and has since fueled embers, smoke and

7  emissions in the area surrounding the Facility. The fire has further discharged smoke, noxious or

8  offensive gases, odors, pollutants, toxins, physical or particulate matter, contaminants and/or

9  chemicals into their area and the properties of Plaintiffs. It has resulted in extreme noxious air for

10  areas within 25 miles from the Facility and beyond, including in Hinkley.

11       29.    The conditions at the Facility and their effect on the surrounding area have also

12  fueled complaints of ailments by members of the public who live and/or work in the areas

13  surrounding the Facility. Residents in this area have reported pungent and unbearable odors, smoke

14  and matter in the air. There have also been reports of headaches, nausea, respiratory problems and

15  animal illness.

16  **B. Defendants' History of Misconduct and Repeated Violations**

17       30.    The Facility has a history of dangerous conditions and ignoring State regulations.

18  This conduct includes operating and/or maintaining the Facility with excessive waste, keeping waste

19  with excessive contamination levels, and processing unacceptable forms of waste.  As further

20  alleged herein, throughout 2022, Defendants have repeatedly violated State laws and regulations and

21  have been cited for violations multiple times by government agencies, including but not limited to

22  the County of San Bernardino and the Mojave Desert Air Quality Management District.

23       31.    For example, Defendants' Facility has repeatedly accepted excessive loads of waste.

24  In violation of California Public Resources Code § 44002, the Facility received more than the

25  maximum daily tonnage of 2,000 wet tons on multiple occasions between April 2022 and June

26  2022. According to a San Bernardino County Environmental Health Services report (filed June 24),

27

28

- 10 -

1  Defendants exceeded the intake limit on multiple occasions before the fire started, including
2  multiple times the week of the fire. Alleged intake violations occurred on April 1, 5, 6, 7, and 11,
3  2022 and on May 10, 12, 17, 20, 24, 25 and 26, 2022.

4      32.    In conjunction with acceptance of excessive waste, Defendants have also
5  repeatedly allowed waste to accumulate on the property in violation of 14 Cal. Code. Regs. §
6  17867, subd. (a)(3). In June 2022, waste was observed accumulating on the south side of the
7  property and the northeast side of the property. Defendants have also repeatedly allowed litter to
8  gather, including but not limited to near the entrance of the Facility. Such conduct is a direct
9  violation of California Code of Regulations, Title 14, section 17867, which provides that "[a]ll
10  handling activities shall be conducted in a manner that minimizes vectors, litter, hazards,
11  nuisances, and noise impacts; and minimizes human contact with, inhalation, ingestion, and
12  transportation of dust, particulates, and pathogenic organisms."

13      33.    Defendants have also processed and continue to process unacceptable forms of
14  waste. Between November 2020 and April 2022, the County of San Bernardino cited the Facility
15  for approximately 39 health and safety code violations. Among one of the repeated violations
16  was Defendants' practice of contaminating its pit with unpermitted forms of waste including
17  mixed waste, raw sewage, industrial materials, mixed demolition and construction debris,
18  plastics, food material and/or brewery waste. The Facility, however, is only allowed to accept
19  two forms of waste: biosolids and green materials. On information and belief, Defendants have
20  also added fresh waste to processed compost that was about to be shipped out.

21      34.    Despite the prohibition on certain wastes, Defendants have accepted and
22  processed brewery muck, which includes spent barley or rice malt. This material is considered
23  food material and is not a permitted form of waste for the Facility. In April 2022, San
24  Bernardino County raised concerns after the Facility accepted unapproved brewery waste from
25  the Anheuser-Busch's Van Nuy's brewery north of Los Angeles. Nevertheless, the conduct has
26  continued.

27

28      - 11 -

35.     Defendants have also engaged in unauthorized dumping of harmful material.  On information and belief, since approximately June 2022, Defendants have been trucking rancid material off site and dumping it in unmarked areas in the Mojave Desert and in unpermitted areas.

36.     In addition, Defendants have been cited for repeatedly failing to prevent off-site litter migration into the surrounding desert ecosystem. In particular, Defendants have failed to clean up prevalent film plastic litter, which has been found on the northeast of its property and frequently blows toward Hinkley, CA.

37.     Due to the conditions described above, including but not limited to processing of unpermitted forms of waste, Defendants and their Facility have violated multiple California regulations.  These include but are not limited to California Public Resources Code, section 44002, California Code of Regulations, Title 14, Section 17867 and California Public Resources Code, section 44004.  In addition, Defendants have and continue to contribute to the distribution and emanation of smoke, noxious or offensive gases, odors, pollutants, toxins, physical or particulate matter, contaminants and/or chemicals into the surrounding area.

**C. Contamination of the Neighboring Areas and the Effect of the Dangerous Conditions at the Facility**

38.     As alleged herein, sometime in or around May 28, 2022, the dangerous conditions at the Facility caused an uncontrolled fire that has increased the emanation of smoke, noxious or offensive gases, odors, pollutants, toxins, physical or particulate matter, contaminants and/or chemicals from the Facility into the surrounding area.

39.     Defendants knew the Facility had dangerous conditions that posed a foreseeable risk to the public and the surrounding areas.

40.     Defendants knew or should have known that the Facility was accepting excessive waste, accepting waste with excessive contamination levels, processing unacceptable forms of waste, allowing litter to accumulate on the property and failing to control fires at the Facility. Defendants further knew or should have known that they were emitting smoke, noxious or

- 12 -

COMPLAINT

1  offensive gases, odors, pollutants, toxins, physical or particulate matter, contaminants and/or
2  chemicals from the Facility into the surrounding area and that said materials were entering the
3  properties of Plaintiffs.

4      41.   In particular, the waste pit has been on fire since approximately May 28, 2022.
5  During this time, it has fueled embers, smoke and emissions in the area surrounding the Facility.
6  In addition, and as further alleged herein, the Facility has been repeatedly cited since January
7  2022 for violations of State regulations, including by the County of San Bernardino and the
8  Mojave Desert Air Quality Management District. Through inspections and citations, Defendants
9  were notified of the dangerous conditions at the Facility alleged herein.

10     42.   Despite this knowledge, Defendants failed to take corrective action or fully
11 disclose the dangerous conditions at the Facility. Defendants continue to accept excessive waste,
12 fail to control fires at the Facility, improperly dump waste off site, put mixed waste and
13 unpermitted waste into the composting pit, allow waste and litter to accumulate on the property,
14 process unacceptable forms of waste, and operate the Facility in a manner that causes smoke,
15 noxious or offensive gases, odors, pollutants, toxins, physical or particulate matter, contaminants
16 and/or chemicals to emanate into the surrounding area and enter the properties of Plaintiffs.

17     43.   As a direct, proximate and substantial cause of Defendants' conduct and the
18 dangerous conditions at the Facility, Plaintiffs suffered harm (and continue to suffer) and
19 sustained damages including, but not limited to, property damage, personal injury, loss of use,
20 lost income, loss of enjoyment of their properties, and/or annoyance, discomfort and
21 inconvenience, among other things.

22     44.   As alleged herein, the dangerous conditions at the Facility and Defendants'
23 improper operation of said Facility have caused smoke, noxious or offensive gases, odors,
24 pollutants, toxins, physical or particulate matter, contaminants and/or chemicals to emanate into
25 the surrounding area and enter the properties of Plaintiffs.

26     45.   The materials and particulate matter, which emanate more than 25 miles from the
27
28                                        - 13 -

                                      COMPLAINT

1   Facility, create an unbearable and noxious odor that is foul and pungent.  In addition to the smell,

2   these noxious materials have caused illness, headaches and nausea among members of the public,

3   including residents of Hinkley. In addition, nearby residents have reported the smell of death and

4   pets that are sick and dying. Among other things, Plaintiffs have suffered and continue to suffer

5   personal injuries and physical ailments as a result of Defendants' conduct.  These include but are

6   not limited to breathing problems, chest tightness, burning eyes, headaches, nausea, sinus issues,

7   dizziness, coughing and/or a myriad of other illnesses. Conditions are so bad that at times there

8   has also been ash and particulate matter falling from the sky.

9          46.     In addition, individuals living within 25 miles of the Facility have reported

10   noxious smoke in their homes. This includes but is not limited to the towns of Barstow and

11   Hinkley, California. On many occasions, the smell and air is so unbearable that Plaintiffs and/or

12   members of the public have been forced to turn off air coolers. As a result, Plaintiffs have

13   sustained further property damage and loss of use and enjoyment of their properties.

14          47.     The public has lodged numerous complaints with the Mojave Desert Air Quality

15   Management District.  On information and belief, the Facility was the subject of two-thirds of all

16   formal complaints filed with the Mojave Desert Air Quality Management District from January

17   to June 2022. In addition, the AQMD observed a 144% spike in complaints.

18          48.     Despite this, Defendants have continued their operations at the Facility and the

19   dangerous conditions persist. As a result, Defendants' conduct and the dangerous conditions at

20   the Facility have rendered Plaintiffs' properties unsafe and unfit for use, and have caused injuries

21   to Plaintiffs.

22          49.     As a direct, legal, proximate and substantial result of Defendants' conduct,

23   Plaintiffs have suffered damages and harm, including but not limited to the following: (1)

24   property damage; (2) loss of use, benefit, goodwill, diminution in value and/or enjoyment of their

25   property; (3) loss of income; (4) damage to home filtration/cooling systems; (5) damage to

26   personal property; (6) other consequential economic losses; (7) mental pain and suffering

27

28                                        - 14 -

including worry, emotional distress, anguish, anxiety and nervousness; (8) annoyance,

discomfort and inconvenience; (9) personal and physical injuries; (10) medical expenses; and/or

(11) loss of earning capacity.

## FIRST CAUSE OF ACTION
### Negligence
### (On Behalf of Plaintiffs Against All Defendants)

50.     Plaintiffs reallege and incorporate by reference all the allegations set forth in this Complaint as though fully set forth herein.

51.     Defendants were and are the owners, operators, managers, and/or proprietors of the Facility, which is the property of Defendants.

52.     Having undertaken the planning, construction, operation, design, maintenance, and/or oversight of the Facility as alleged herein, Defendants had a nondelegable duty to use due care in the same.

53.     As the owners, operators, managers, and/or proprietors of the Facility, Defendants owed a nondelegable duty, including to Plaintiffs, to use reasonable care to keep the premises in a reasonably safe condition. This included, among other things, a duty to protect against reasonably foreseeable risks of injury that might result from dangerous conditions at said Facility (i.e. on Defendants' property) and a duty to operate the facility in a manner that did not harm others, harm others' property, or interfere with others' use of their property.  As the operators of the Facility, Defendants further had a duty: (1) to take reasonable and ordinary care to prevent a dangerous condition at the Facility; (2) to take reasonable and ordinary care to minimize the risk of fire at the Facility, unauthorized fires and/or uncontrolled fires; (3) to use reasonable care to prevent dangerous conditions that would cause offensive matters to emanate from the Facility including but not limited to smoke, noxious or offensive gases, odors, pollutants, physical or particulate matter, toxins contaminants and/or chemicals; (4) to take reasonable care not to create or maintain conditions at the Facility that would cause harm or damage to Plaintiffs or their properties; (5) to prevent the emanation of offensive matters including but not limited to smoke,

- 15 -

1    noxious or offensive gases, odors, pollutants, toxins, physical or particulate matter, contaminants

2    and/or chemicals, among other things; and (6) to take reasonable and ordinary care to prevent

3    injuries to Plaintiffs arising from Defendants' conduct and operation of the Facility. These duties

4    were nondelegable.

5         54.     Defendants owed the duties alleged herein to Plaintiffs, who resided in and/or

6    owned property in the area surrounding the Facility.

7         55.     Defendants so negligently and carelessly owned, operated, managed, controlled,

8    supervised, and/or maintained the Facility so as to expose Plaintiffs to an unreasonable risk of

9    harm, thereby breaching the duties owed to Plaintiffs.

10        56.     Defendants breached their duty by, among other things: (1) allowing, creating,

11    permitting and/or maintaining a dangerous condition at the Facility; (2) operating the Facility in a

12    manner that foreseeably caused a fire, unauthorized fire and/or uncontrolled fire; (3) operating

13    the Facility in a manner that results in offensive matters emanating from the Facility including

14    but not limited to smoke, noxious or offensive gases, odors, pollutants, toxins, physical or

15    particulate matter, contaminants and/or chemicals; (4) creating a hazardous condition; (5)

16    allowing, creating and/or maintaining conditions at the Facility that harmed or damaged

17    Plaintiffs and/or their property; (6) interfering with Plaintiffs' use and enjoyment of their

18    properties; (7) failing to supervise the maintenance, design, construction and/or operation of the

19    Facility; (8) failing to supervise the employees of the Facility and/or the Defendants; and/or (9)

20    causing injuries to Plaintiffs through their conduct and operation of the Facility. At all times

21    relevant herein, Defendants planned, constructed, operated, designed, altered, maintained and/or

22    the Facility in a dangerous condition.

23        57.     In particular, Defendants negligently, carelessly, recklessly and without due

24    regard to the safety of Plaintiffs, created, permitted, continued, and/or maintained an

25    unreasonably dangerous and unsafe condition at the Facility. As alleged herein, Defendants

26    received more than the daily maximum tonnage of waste, allowed excessive waste to accumulate

27

28                     - 16 -

on the property, contaminated the Facility with unpermitted forms of waste, processed

unpermitted forms of waste, unreasonably mixed waste, and failed to prevent off-site litter

migration. In addition, Defendants have created, maintained, permitted and/or allowed an

uncontrolled fire to burn at the Facility, emitting smoke, noxious or offensive gases, odors,

pollutants, toxins, physical or particulate matter and/or chemicals.  These conditions were

dangerous in that they created a foreseeable risk of harm. They also created a foreseeable risk

that smoke, noxious or offensive gases, odors, pollutants, toxins, physical or particulate matter

and/or chemicals would be released from the Facility into the surrounding area, harming

Plaintiffs and their property.

58.     The risk of fire and the emission of smoke, noxious or offensive gases, odors,

pollutants, contaminants, particulate matter, toxins and/or chemicals was reasonably foreseeable,

if not expected, by a reasonable and prudent person and were reasonably foreseeable and to be

expected by Defendants. As further alleged herein, the dangerous condition created a reasonably

foreseeable risk of the kind of harm which occurred.

59.     Defendants had actual or constructive notice of the dangerous conditions at the

Facility. As operators of the Facility, Defendants knew or should have known that the release of

smoke, noxious or offensive gases, odors, pollutants, toxins, physical or particulate matter,

contaminants and/or chemicals was likely to occur as a result of their conduct (including but not

limited to their acceptance of excessive waste, mixing of waste, etc.), as alleged herein, and they

failed to take corrective action(s).

60.     As a result of the dangerous conditions at the Facility, and as further alleged

herein, the Facility has an uncontrolled fire that began on or around May 28, 2022 and continues

to release excessive and unreasonable smoke, noxious and offensive gases and odors, pollutants,

toxins, physical or particulate matter, contaminants, and/or chemicals.  The continued release of

this material and these offensive odors has caused damage and injuries to Plaintiffs.

61.     Defendants' failure to comply with their duties of care and their allowing a

- 17 -

1 | dangerous condition to persist at the Facility proximately caused damage to Plaintiffs. The

2 | negligence of Defendants' was a substantial factor causing the damages suffered by Plaintiffs.

3 |      62.    Defendants placed the property in a dangerous condition and had other means

4 | available to take alternative action that would not have created the dangerous conditions.  In

5 | addition, Defendants had sufficient time prior to the injuries alleged herein to take measures to

6 | protect against the dangerous condition and/or correct the dangerous condition. Defendants have

7 | been repeatedly cited for violations of California Regulations, including for their acceptance of

8 | excessive waste and contaminating the Facility pit with unpermitted forms of waste. Defendants,

9 | however, did not take any measures to protect against the dangerous condition at the Facility or

10 | correct the dangerous conditions.

11 |      63.    Due to the Defendants' conduct, the Facility was in a dangerous condition at the

12 | time of the injuries alleged herein.

13 |      64.    As a direct, proximate, and substantial result of Defendants' negligence, Plaintiffs

14 | suffered damages and injuries including, but not limited to, property damage, destruction of

15 | and/or damage to real and personal property, personal injury, medical expenses, loss of income,

16 | restoration costs, loss of earning capacity, loss of goodwill, loss of use, benefit, goodwill and

17 | diminution in value and/or enjoyment of such property, loss of profits, economic damages,

18 | mental pain and suffering, worry, emotional distress, anguish, anxiety, nervousness and costs

19 | associated with clean-up and reopening, among other things. As alleged herein, Plaintiffs lost the

20 | use and enjoyment of their property, incurred expenses as a consequence of that loss and the

21 | emanation of noxious odors, and/or suffered personal injuries.  Personal injuries include but are

22 | not limited to breathing problems, chest tightness, burning eyes, headaches, nausea, sinus issues,

23 | dizziness, coughing and/or a myriad of other illnesses. As further alleged herein, Plaintiffs have

24 | therefore suffered damages in an amount to be proven at trial, but believed to be above this

25 | Court's jurisdictional minimum.

26 |      65.    The injuries sustained by Plaintiffs were proximately caused by the dangerous

27 |

28 |                               - 18 -

COMPLAINT

31

1 condition alleged herein.

2      66.    By engaging in the conduct described herein, Defendants acted with oppression,
3 fraud, malice, and with conscious disregard of Plaintiffs' rights and safety. Plaintiffs are
4 informed and based thereon allege that the conduct of Defendants was oppressive, malicious, and
5 despicable in that it was intentional and done in conscious disregard for the rights and safety of
6 others, and was carried out with a conscious disregard of Plaintiffs' right to be free from such
7 tortious behavior, such as to constitute oppression, fraud or malice pursuant to California *Civil*
8 *Code* section 3294, entitling the Plaintiffs to punitive damages against Defendants in an amount
9 appropriate to punish and set an example of Defendants. As such, Plaintiffs are entitled to
10 punitive and exemplary damages in an amount to be proven at trial.

11    **A. Negligence Per Se: Defendants' Violations of State Regulations**

12      67.    Through the acts, omissions, and conduct alleged herein, Defendants have
13 violated multiple California laws, statutes, ordinances, safety regulations and/or enactments,
14 including but not limited to: (1) California Public Resources Code, section 44002; (2) California
15 Code of Regulations, Title 14, Section 17867; and (3) California Public Resources Code, section
16 44004.

17      68.    California Code of Regulations, Title 14, section 17867 provides that "[a]ll
18 handling activities shall be conducted in a manner that minimizes vectors, litter, hazards,
19 nuisances, and noise impacts; and minimizes human contact with, inhalation, ingestion, and
20 transportation of dust, particulates, and pathogenic organisms."

21      69.    California Public Resources Code, section 44002 provides that, among other
22 things, no person shall operate a solid waste facility without a solid waste facilities permit (where
23 required). The prohibition set by Section 44002 includes the operation of a solid waste facility
24 outside the permitted boundaries specified in any solid waste facilities permit.

25      70.    California Public Resources Code section 44004, subd. (a) provides that "An
26 operator of a solid waste facility shall not make a significant change in the design or operation of

27

28                       - 19 -

1   the solid waste facility that is not authorized by the existing permit, unless the change is

2   approved by the enforcement agency, the change conforms with this division and all regulations

3   adopted pursuant to this division, and the terms and conditions of the solid waste facilities permit

4   are revised to reflect the change."

5        71.    Defendants' violations of California laws, regulations and statutes, as alleged

6   herein, were a substantial factor in bringing about the harm suffered by Plaintiffs.

7        72.    The harm and/or injury that resulted from Defendants' conduct was the nature of

8   which the laws, statutes, or regulations (including but not limited to (1) California Public

9   Resources Code, section 44002; (2) California Code of Regulations, Title 14, Section 17867; and

10   (3) California Public Resources Code, section 44004) were designed to prevent.

11        73.    Plaintiffs, who suffered injury as a result of Defendants' conduct, were of the

12   class of persons for whose protection the above laws and regulations were adopted.

13   **SECOND CAUSE OF ACTION**
**Strict Liability for Ultrahazardous Activity**

14   **(On Behalf of Plaintiffs Against All Defendants)**

15        74.    Plaintiffs reallege and incorporate by reference all the allegations set forth in this

16   Complaint as though fully set forth herein.

17        75.    Defendants were engaged in an ultrahazardous activity.  Among other things,

18   Defendants were engaged in the handling, collection storing, treatment, composting and

19   containment of waste substances, human feces, solid waste, sewage, green waste, biosolids

20   and/or other substances containing unsafe materials.

21        76.    Defendants elected to keep a dangerous condition at their Facility including

22   through the acceptance of excessive waste, the accumulation of waste and litter on the property,

23   the inclusion of mixed materials in their composting pit, processing unpermitted waste, and

24   allowing or creating uncontrolled fires at the Facility.

25        77.    As a direct, proximate, and substantial result of Defendants' ultrahazardous

26   activity, Plaintiffs suffered damages and injuries including, but not limited to, property damage,

27

28                 - 20 -

1  destruction of and/or damage to real and personal property, loss of use, benefit, and enjoyment

2  of such property, nuisance, personal injury, medical expenses, diminution in value of such

3  property, loss of income, loss of earning capacity, economic damages, annoyance, discomfort

4  and inconvenience, mental pain and suffering, worry, emotional distress, anguish, anxiety,

5  nervousness and, exposure to offensive matters including but not limited to smoke, noxious or

6  offensive gases, odors, pollutants, toxins, particulate matter, contaminants and/or chemicals,

7  among other things. As further alleged herein, Plaintiffs have therefore suffered damages in an

8  amount to be proven at trial, but believed to be above this Court's jurisdictional minimum.

9      78.    The harm suffered by Plaintiffs was the kind of harm that would be anticipated as

10  a result of the risk created by Defendants' conduct and its operation of the Facility in a dangerous

11  condition.

12      79.    Defendants' ultrahazardous activities were a substantial factor in causing the harm

13  to Plaintiffs.

### THIRD CAUSE OF ACTION
**Trespass**
**(On Behalf of Plaintiffs Against All Defendants)**

17      80.    Plaintiffs hereby reallege and incorporate by reference all the allegations set forth

18  in this Complaint as though fully set forth herein.

19      81.    At all times relevant herein, Plaintiffs were the owners, tenants, and/or lawful

20  occupiers of property damaged by Defendants and the waste Facility.

21      82.    Defendants negligently and/or intentionally allowed: (1) dangerous and/or

22  hazardous conditions at the Facility; (2) fire(s), unauthorized fire(s) and/or uncontrolled fire(s) to

23  ignite and burn at the Facility; (3) the waste Facility to emanate offensive matters including but

24  not limited to smoke, noxious or offensive gases, odors, pollutants, toxins, physical or particulate

25  matter, and chemicals, among other things; (4) the Facility to interfere with Plaintiffs' use and

26  enjoyment of their properties; and (5) otherwise allowed the Facility to cause harm to Plaintiffs.

27

28                                    - 21 -

COMPLAINT

83.     As alleged herein, Defendants negligently and/or intentionally deposited smoke, noxious or offensive gases, odors, pollutants, toxins, physical or particulate matter, and chemicals upon the properties of Plaintiffs, and by so doing, entered their properties. This was a substantial factor that resulted in Plaintiffs' harm.

84.     Plaintiffs did not grant permission for Defendants to cause the smoke, noxious or offensive gases, odors, pollutants, toxins, physical or particulate matter, and/or chemicals to enter their properties in the manner it did; and/or Defendants exceeded any permission.

85.     Defendants' entry onto Plaintiffs' property was unauthorized and tangible, and interfered with Plaintiffs' exclusive possessory rights and otherwise caused them harm as further alleged herein.

86.     As a direct, proximate and substantial cause of the trespass, Plaintiffs have suffered and will continue to suffer damages, including but not limited to property damage, discomfort, personal injury, loss of use, benefit, goodwill, diminution in value and/or enjoyment of their property, loss of income, loss of earning capacity, other consequential losses, medical expenses, mental pain and suffering, and/or annoyance and inconvenience, among other things, in an amount to be proven at trial.

87.     Defendants' conduct was a substantial factor in causing Plaintiffs' harm.

**FOURTH CAUSE OF ACTION**
**Public Nuisance**
**(On Behalf of Plaintiffs Against All Defendants)**

88.     Plaintiffs reallege and incorporate by reference all the allegations set forth in this Complaint as though fully set forth herein.

89.     Defendants' actions, conduct, omissions, negligence, trespass and failure to act resulted in the dangerous conditions at the Facility, a foreseeable obstruction to the free use of Plaintiffs' property, and the release of smoke, noxious or offensive gases, odors, pollutants, physical or particulate matter, toxins, contaminants and/or chemicals into the area surrounding the Facility. In addition, Defendants' actions, conduct, omissions, negligence, trespass and

- 22 -

COMPLAINT

1  failure to act also invaded Plaintiffs' right to use their property, caused Plaintiffs to suffer

2  physical injuries, endangered the health and safety of Plaintiffs, and/or interfered with their

3  enjoyment of said property, causing them unreasonable harm and substantial actual damages

4  constituting a nuisance.

5  90.    Defendants' conduct created a condition and/or permitted a condition to exist,

6  including but not limited to the release of toxins and noxious particulate matter, that was harmful

7  to health, was offensive to the senses and was dangerous in that it was unsanitary and/or created

8  a risk of illness or damage to property. Defendant also created a condition that was a fire hazard

9  and posed a dangerous condition to Plaintiffs and their residences and/or properties.

10  91.    As a result, Defendants' conduct obstructed the free use of property and interfered

11  with the comfortable enjoyment of life or property by Plaintiffs and otherwise caused them harm.

12  92.    Plaintiffs did not consent to Defendants' conduct, as alleged herein.

13  93.    Defendants' conduct, the dangerous conditions at the Facility, and the release of

14  toxins and other noxious particulate matter, affected a substantial number of people surrounding

15  the Facility at the same time.

16  94.    An ordinary person would be reasonably annoyed or distributed by Defendants'

17  conduct, the dangerous conditions at the Facility and the release of smoke, noxious or offensive

18  gases, odors, pollutants, physical or particulate matter, toxins, contaminants and/or chemicals

19  into the area surrounding the Facility.

20  95.    The serious nature of the harm, including but not limited to the health risks,

21  property damage and the continuing odor, outweighs the social utility of Defendants' conduct.

22  96.    Plaintiffs suffered harm that was different from the type of harm suffered by the

23  general public.

24  97.    Defendants' conduct, as alleged herein, was a substantial factor in causing the

25  harm to Plaintiffs.

26  **FIFTH CAUSE OF ACTION**
**Private Nuisance**
27  **(On Behalf of Plaintiffs Against All Defendants)**

28  - 23 -

COMPLAINT

98.     Plaintiffs reallege and incorporate by reference all the allegations set forth in this Complaint as though fully set forth herein.

99.     Plaintiffs owned, leased, controlled, occupied, resided at or otherwise rightfully possessed a property within 25 miles of Defendants' Facility.

100.     Defendants' actions, conduct, omissions, negligence, trespass and failure to act resulted in the dangerous conditions at the Facility, a foreseeable obstruction to the free use of Plaintiffs' property, and the release of smoke, noxious or offensive gases, odors, pollutants, physical or particulate matter, toxins, contaminants and/or chemicals into the area surrounding the Facility. In addition, Defendants' actions, conduct, omissions, negligence, trespass and failure to act also obstructed Plaintiffs' free use of their property, interfered with their comfortable enjoyment of said property, and caused them unreasonable harm and substantial actual damages constituting a nuisance

101.     Defendants' conduct created a condition and/or permitted a condition to exist, including but not limited to the release of noxious gases, odors and particulate matter, that was harmful to health and was dangerous in that it was unsanitary and created a risk of illness, damaged personal property and/or was offensive to the senses. In addition, Defendants' conduct substantially interfered with Plaintiffs' use and enjoyment of their property, was offensive to the senses, caused physical injuries, was a fire hazard and posed a dangerous condition to Plaintiffs and their properties.

102.     Plaintiffs did not consent to Defendants' conduct, as alleged herein.

103.     An ordinary person would be reasonably annoyed or disturbed by Defendants' conduct, the dangerous condition,  and the release of smoke, noxious or offensive gases, odors, pollutants, physical or particulate matter, toxins, contaminants and/or chemicals into the area surrounding the facility.

104.     As further alleged herein, Plaintiffs were harmed by Defendants' conduct. Among

- 24 -

COMPLAINT

1   other things, Plaintiffs suffered loss of use and damage to their property and/or personal injury.

2   Defendants' conduct, as alleged herein, was a substantial factor in causing the harm to Plaintiffs.

3       105.   The serious nature of the harm, including but not limited to the health risks,

4   property damage and the continuing odor, outweighs the social utility of Defendants' conduct.

5

6   **PRAYER FOR RELIEF**

7       **WHEREFORE**, Plaintiffs pray for judgment against Defendants, and each of them, as

8   follows:

9       1.   That the Court enter judgment against Defendants for each of the causes of

10        action alleged against them;

11      2.   That the Court enter an order directing Defendants to comply with California

12        law, including but not limited to California Public Resources Code, section

13        44002,  California Code of Regulations, Title 14, Section 17867 and

14        California Public Resources Code, section 44004;

15      3.   For all compensatory, general and special damages according to proof;

16      4.   Loss of the use, benefit, goodwill and enjoyment of the real and personal

17        property of Plaintiffs;

18      5.   Repair, depreciation, and/or replacement of damaged, destroyed, and/or lost

19        personal and/or real property;

20      6.   Loss of wages, earning capacity and/or profits or proceeds;

21      7.   For all medical expenses;

22      8.   For medical monitoring;

23      9.   For all recoverable compensatory, consequential, and/or statutory damages in

24        the maximum amount permitted by law or other equitable monetary relief,

25        plus pre and post-judgment interest thereon;

26      10.  For other equitable relief;

27

28  - 25 -

COMPLAINT

1   11.   For prejudgment interest as provided by law;

2   12.   For costs of suit incurred herein;

3   13.   For payment of reasonable attorneys' fees and costs as permitted by law,

4          including but not limited to California Code of Civil Procedure section

5          1021.5, and other statutes as may be applicable;

6   14.   Attorneys' fees, expert fees, consultant fees and litigation costs and expenses,

7          as allowed under the law, including but not limited to California Code of

8          Civil Procedure § 1021.9;

9   15.   General damages for fear, worry and anxiety, among other things;

10   16.   For injury for mental and emotional stress according to proof;

11   17.   For all such other and further relief as the Court deems just and proper.

12                              **JURY DEMAND**

13        Plaintiffs hereby demand trial by jury on each and every triable issue.

14

15   Date:  August 4, 2022                    Respectfully submitted,

16

17                              *Natacha N. Serino*

18                              Natasha N. Serino, Esq.
                                SCHACK LAW GROUP
19                              16870 W. Bernardo Drive, #400
                                San Diego, CA 92128
20                              (858) 485-6535  (858) 485-0608 fax
                                Natashaserino@schacklawgroup.com
21

22

23

24

25

26

27

28                                   - 26 -

                                  COMPLAINT

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Natasha Serino, Esq. (SBN 284711); Shannon F. Nocon, Esq. (SBN 416523)<br>SCHACK LAW GROUP<br>16870 West Bernardo Drive, Suite 400<br>San Diego, CA 92127<br>TELEPHONE NO.: 858-485-6535   FAX NO.: 858-485-0608<br>ATTORNEY FOR *(Name):* Plaintiffs | **F I L E D**<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN BERNARDINO<br>SAN BERNARDINO DISTRICT<br><br>AUG 0 4 2022<br><br>By *Brian Summers*<br>Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Bernardino
STREET ADDRESS: 247 West Third Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Bernardino, CA 92415
BRANCH NAME: San Bernardino District - Civil Division

CASE NAME:
Catherine A. Blevins, et al. v. Synagro Technologies Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: CIV SB  2 2 1 6 8 9 0 |
|---|---|---|
| ☑ Unlimited  ☐ Limited<br>(Amount  (Amount<br>demanded  demanded is<br>exceeds $25,000)  $25,000 or less) | ☐ Counter  ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: UNLIMITED |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☑ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☑ is ☐ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☑ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify):*  5 - Negligence, Strict Liability for Ultrahazardous Activity, Trespass, etc
5. This case ☐ is ☑ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: August 4, 2022
Natasha N. Serino                                ▶  *Natasha N. Serino*
(TYPE OR PRINT NAME)                                (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, only parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*
**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/
Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
Medical Malpractice–
Physicians & Surgeons
Other Professional Health Care
Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD
(e.g., assault, vandalism)
Intentional Infliction of
Emotional Distress
Negligent Infliction of
Emotional Distress
Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice
*(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease
Contract *(not unlawful detainer or wrongful eviction)*
Contract/Warranty Breach–Seller
Plaintiff *(not fraud or negligence)*
Negligent Breach of Contract/
Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections
Case
Insurance Coverage *(not provisionally complex)* (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court
Case Matter
Writ–Other Limited Court Case
Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor
Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
*(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of
County)
Confession of Judgment *(non-domestic relations)*
Sister State Judgment
Administrative Agency Award
*(not unpaid taxes)*
Petition/Certification of Entry of
Judgment on Unpaid Taxes
Other Enforcement of Judgment
Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
Declaratory Relief Only
Injunctive Relief Only *(non-harassment)*
Mechanics Lien
Other Commercial Complaint
Case *(non-tort/non-complex)*
Other Civil Complaint
*(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
Governance (21)
Other Petition *(not specified above)* (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult
Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late
Claim
Other Civil Petition

**CIVIL CASE COVER SHEET**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN BERNARDINO**

CATHERINE A. BLEVINS, et al.

Case No.: ___ CIV SB 2 2 1 6 8 9 0

vs.

**CERTIFICATE OF ASSIGNMENT**

SYNAGRO TECHNOLOGIES INC., et al.

A civil action or proceeding presented for filing must be accompanied by this Certificate. If the ground is the residence of a party, name and residence shall be stated.

The undersigned declares that the above-entitled matter is filed for proceedings in the
San Bernardino _____ District of the Superior Court under Rule131 and General Order
of this court for the checked reason:

■ General          ☐ Collection
**Nature of Action**       **Ground**

| | | |
|---|---|---|
| ☐ | 1. Adoption | Petitioner resides within the district |
| ☐ | 2. Conservator | Petitioner or conservatee resides within the district. |
| ☐ | 3. Contract | Performance in the district is expressly provided for. |
| ☐ | 4. Equity | The cause of action arose within the district. |
| ☐ | 5. Eminent Domain | The property is located within the district. |
| ☐ | 6. Family Law | Plaintiff, defendant, petitioner or respondent resides within the district. |
| ☐ | 7. Guardianship | Petitioner or ward resides within the district or has property within the district. |
| ☐ | 8. Harassment | Plaintiff, defendant, petitioner or respondent resides within the district. |
| ☐ | 9. Mandate | The defendant functions wholly within the district. |
| ☐ | 10. Name Change | The petitioner resides within the district. |
| ☒ | 11. Personal Injury | The injury occurred within the district. |
| ☐ | 12. Personal Property | The property is located within the district. |
| ☐ | 13. Probate | Decedent resided or resides within or had property within the district. |
| ☐ | 14. Prohibition | The defendant functions wholly within the district. |
| ☐ | 15. Review | The defendant functions wholly within the district. |
| ☐ | 16. Title to Real Property | The property is located within the district. |
| ☐ | 17. Transferred Action | The lower court is located within the district. |
| ☐ | 18. Unlawful Detainer | The property is located within the district. |
| ☐ | 19. Domestic Violence | The petitioner, defendant, plaintiff or respondent resides within the district. |
| ☐ | 20. Other _____ | |
| ☐ | 21. THIS FILING WOULD | NORMALLY FALL WITHIN JURISDICTION OF SUPERIOR COURT |

The address of the accident, performance, party, detention, place of business, or other factor which qualifies this case for filing in the above-designed district is:

Nursery Products Hawes Composting Facility _____ W/SW Hwy 58 Helendale Road, Hinl
NAME – INDICATE TITLE OR OTHER QUALIFYING FACTOR          ADDRESS

Hinkley _____ CA _____ 93516
CITY          STATE          ZIP CODE

I declare, under penalty of perjury, that the foregoing is true and correct and that this declaration was
executed on August 4, 2022 _____ at San Diego _____,
California.

*Natacha N. Serino*
_____
Signature of Attorney/Party

1  Superior Court of California
   County of San Bernardino
2  247 W. Third Street, Dept. S-26
   San Bernardino, CA  92415-0210

**F I L E D**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO DISTRICT

OCT 0 3 2022

BY _____*alfie Cervantes*_____
ALFIE CERVANTES, DEPUTY

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN BERNARDINO, SAN BERNARDINO DISTRICT

| | |
|---|---|
| CATHERINE BLEVINS | Case No.: CIVSB 2216898 |
| vs. | |
| SYNAGRO TECHNOLOGIES INC. | **INITIAL CASE MANAGEMENT CONFERENCE ORDER** |

This case is assigned for all purposes to Judge David Cohn in the Complex

Litigation Program, Department S-26, located at the San Bernardino Justice Center, 247

West Third Street, San Bernardino, California, 92415-0210.  Telephone numbers for

Department S-26 are (909) 521-3519 (Judicial Assistant) and (909) 708-8866 (Court

Attendant).

Revised 9/15/22

-1-

## SERVICE OF THIS ORDER

Plaintiffs' counsel is ordered to serve this Order on counsel for each defendant or, if counsel is not known, on each defendant within five days of the date of this Order. If the complaint has not been served as the date of this Order, counsel for plaintiff is to serve the summons and complaint along with this Order within ten days of the date of this Order.  Failure to serve this order may result in the imposition of monetary sanctions.

## THE INITIAL CASE MANAGEMENT CONFERENCE

An initial Case Management Conference (CMC) is scheduled for DEC 2 3 2022 at 9:00 a.m.  Counsel may attend the initial CMC either in person or remotely, via CourtCall.  Contact CourtCall at (888) 882-6878 (www.CourtCall.com) to schedule your appearance.  Audio or video appearances are available.  CourtCall may be used for all CMCs, motions, and other hearings.  In person attendance is not required at the initial CMC or at subsequent conferences or motions unless specifically ordered by the court.

Counsel for all parties are ordered to attend the initial CMC.  If there are defendants who have not yet made a general or special appearance, those parties who are presently before the court may jointly request a continuance of the initial CMC to allow additional time for such non-appearing defendants to make their general or special appearances.   Such a request should be made by submitting a Stipulation and Proposed Order to the Court, filed directly in Department S-26 (not in the clerk's office), no later than five court days before the scheduled hearing.

## RESPONSIVE PLEADINGS

Unless otherwise agreed by the parties, responsive pleadings are due as provided by statute.  There is no stay on the pleadings or motions pending the initial

Revised 9/15/22

-2-

1  CMC.  If, however, counsel agree to stay formal proceedings to facilitate settlement

2  discussions or for other reasons, each defendant is directed to file either a Notice of

3  General Appearance or a Notice of Special Appearance (if counsel intends to challenge

4  personal jurisdiction).  The notices are for purposes of identification of counsel and

5

6  preparation of a service list.  The filing of a Notice of General Appearance is without

7  prejudice to any substantive or procedural challenges to the complaint (including subject

8  matter jurisdiction), without prejudice to any denial or affirmative defense, and without

9  prejudice to the filing of any cross-complaint.  The filing of a Notice of Special

10
   Appearance is without prejudice to any challenge to the court's exercise of personal
11
   jurisdiction.
12

13                              **DISCOVERY**

14         Unless all counsel agree otherwise, <u>discovery is stayed</u> pending the initial CMC.

15  If the parties agree to conduct discovery in advance of the initial CMC, commencement

16  of discovery is governed by statute.
17

18       **AGENDA FOR THE INITIAL CASE MANAGEMENT CONFERENCE**

19         Counsel for all parties are ordered to meet and confer in person no *later* than

20  fourteen days before the initial CMC to discuss the subjects listed below.  Counsel

21  must be fully prepared to discuss these subjects with the court:
22

23     1. Any issues of recusal or disqualification;

24     2. Any potentially dispositive or important threshold issues of law or fact that, if

25        considered by the court, may simplify or further resolution of the case;

26     3. Appropriate mechanisms for Alternative Dispute Resolution;

27

28

**Revised 9/15/22**

-3-

4. A plan for the preservation of evidence and a uniform system for the identification of documents to be used throughout the course of this litigation, including discovery and trial;

5. A discovery plan for the disclosure and production of documents and other discovery, including whether the court should order automatic disclosures, patterned on Federal Rule of Civil Procedure 26(a) or otherwise;

6. Whether it is advisable to conduct discovery in phases so that information needed to conduct meaningful ADR is obtained early in the case;

7. Any issues involving the protection of evidence and confidentiality;

8. The use and selection of an electronic service provider;

9. The handling of any potential publicity issues;

10. Any other issues counsel deem appropriate to address with the court.

## THE JOINT REPORT

Counsel are ordered to meet and confer, in person or by telephone or video conference, and to prepare a joint report for the initial CMC, to be filed in advance of the conference date.  Separate reports from each party are not allowed.  Judicial council form CMC statements are not allowed.

The joint report must be filed in the regular course in the Clerk's office in advance of the hearing, but to assure that the report is timely received in the department, a courtesy copy of the report should be emailed to jointcmcreports@sb-court.org.  This is a dedicated email address only for courtesy copies of joint reports.  It is not a substitute for filing documents, and any unauthorized documents sent to the dedicated email address will be discarded without review.  All counsel must be cc'd on the email to avoid *ex parte* communications.

-4-

The joint report must include the following:

1. Whether the case should or should not be treated as complex;

2. Whether additional parties are likely to be added and a proposed date by which all parties must be served;

3. A service list (the service list should identify all primary and secondary counsel, firm names, addresses, telephone numbers, email addresses, and fax numbers for all counsel.)

4. Whether the court should issue an order requiring electronic service.  Counsel should advise the court regarding any preferred web-based electronic service provider;

5. Whether any issues of jurisdiction or venue exist that might affect this court's ability to proceed with this case.

6. Whether there are applicable arbitration agreements, and the parties' views on their enforceability;

7. A list of all related litigation pending in this or other courts (state and federal), a brief description of any such litigation, including the name of the judge assigned to the case, and a statement whether any additional related litigation is anticipated;

8. A description of the major factual and legal issues in the case.  The parties should address any contracts, statutes, or regulations on which claims or defenses are based, or which will require interpretation in adjudicating the claims and defenses;

Revised 9/15/22

-5-

9. The parties' tentative views on an ADR mechanism and how such mechanism might be integrated into the course of the litigation;

10. A discovery plan, including the time needed to conduct discovery and whether discovery should be conducted in phases or limited (and, if so, the order of phasing or types of limitations). With respect to the discovery of electronically stored information (ESI ), the plan should include:

    a. Identification of the Information Management Systems used by the parties;

    b. The location and custodians of information that is likely to be subject to production (including the identification of network and email servers and hard-drives maintained by custodians);

    c. The types of ESI that will be requested and produced, e.g. data files, emails, etc.;

    d. The format in which ESI will be produced;

    e. Appropriate search criteria for focused requests.

    f. A statement whether the parties will allow their respective IT consultants or employees to participate directly in the meet and confer process.

11. Whether the parties will stipulate that discovery stays or other stays entered by the court for case management purposes will be excluded in determining the statutory period for bringing the case to trial under Code of Civil Procedure Section 583.310 (the Five Year Rule).

12. Recommended dates and times for the following:

    a. The next CMC (absent special circumstances, the court typically schedules the next CMC approximately six to eight months out);

    b. A schedule for any contemplated ADR;

c.  A filing deadline (and proposed briefing schedule) for any anticipated non-discovery motions.

d.  With respect to class actions, the parties' tentative views on an appropriate deadline for a class certification motion to be filed.

To the extent the parties are unable to agree on any matter to be addressed in the Joint Report, the positions of each party or of various parties should be set forth separately.  The parties are encouraged to propose, either jointly or separately, any approaches to case management that they believe will promote the fair and efficient handling of this case.

Any stipulations to continue conferences or other hearings throughout this litigation must be filed with the court <u>directly in Department S-26 (not in the Clerk's office)</u>, no later than five court days before the conference or hearing date.  Stipulations filed only in the Clerk's office or submitted late to the Department likely cannot be accommodated.

## JOINT REPORTS FOR SUBSEQUENT CONFERENCES

Counsel must submit a joint report for each conference after the initial CMC.  The report should address how the case has moved forward since the last conference, what needs to be accomplished in the future, and how the court can assist the parties move the case towards resolution.  As with the initial report, subsequent joint reports must be filed in the regular course in the Clerk's office in advance of the hearing, but to assure that the reports are timely received in the department, courtesy copies should be emailed to jointcmcreports@sb-court.org.  This is a dedicated email address only for courtesy copies of joint reports.  It is not a substitute for filing documents, and any

1   unauthorized documents sent to the dedicated email address will be discarded without

2   review.  All counsel must be cc'd on the email to avoid *ex parte* communications.

3                        <u>**INFORMAL DISCOVERY CONFERENCES**</u>

4           Motions concerning discovery cannot be filed without first requesting an informal

5   discovery conference (IDC) with the court.  Making a request for an IDC automatically

6
7   stays the deadline for filing any such motion.  IDCs are conducted by remote video

8   conference, using Zoom.    If counsel's computer (or other device) does not have

9   camera capability, an audio-only option is available.  Video appearance at the IDC,

10
11  however, is encouraged.  In-person attendance at the IDC is permissible only if all

12  counsel are appearing in person.  The Court will provide a link to join the remote

13  conference at the appointed time.  Please provide Department S-26's Judicial Assistant

14  ((909) 521-3519) or Court Attendant ((909) 708-8866) with an e-mail address.  No

15  briefing is allowed for the IDC, but counsel (either jointly or separately) should <u>lodge</u>

16
17  (not file) a <u>one page statement of the issues</u> in dispute in Department S-26 no later than

18  the day before the IDC.  All IDCs are off the record.

19          If all counsel agree, remote conferences are not limited to discovery issues;

20  counsel may address other matters with the court, with the understanding that the

21
22  conferences are off the record and that the court will make no orders absent agreement

23  among the parties.

24

25  Dated: _____ 10/7 _____ , 2022.

26

27                                                          _____
                                                            David Cohn,
28                                                          Judge of the Superior Court