1  GARY A. PRAGLIN (SBN 101256)
   gpraglin@cpmlegal.com
2  KELLY W. WEIL (SBN 291398)
   kweil@cpmlegal.com
3  HANNAH K. BROWN (SBN 337592)
   hbrown@cpmlegal.com
4  **COTCHETT, PITRE & McCARTHY, LLP**
5  2716 Ocean Park Blvd., Suite 3088
   Santa Monica, CA 90405
6  Tel.: (310) 392-2008
   Fax: (310) 392-0111
7
8
9  ALEXANDER M. SCHACK (SBN 99126)      GREGORY J. HOUT (SBN 135746)
   alexschack@schacklawgroup.com         ghout@houtlaw.com
10 NATASHA N. SERINO (SBN 284711)       **LAW OFFICES OF GREGORY J. HOUT**
   natashaserino@schacklawgroup.com
11 SHANNON F. NOCON (SBN 316523)        12396 World Trade Drive Suite 206
   shannonnocon@schacklawgroup.com      San Diego, CA 92128
12 **SCHACK LAW GROUP**                  Tel.: (858) 946-6658
   16870 West Bernardo Drive, Suite 400  Fax: (858) 946-6659
13 San Diego, CA 92127
14 Tel.: (858) 485-6535
   Fax: (858) 485-0608
15
   *Attorneys for Plaintiffs*
16
                    **UNITED STATES DISTRICT COURT**
17
                    **CENTRAL DISTRICT OF CALIFORNIA**
18

19  IN RE NURSERY PRODUCTS          | Lead Case No. 5:22-cv-01866-FLA-SHK
    LITIGATION
20                                    **PLAINTIFFS' OPPOSITION TO
    This Document Relates To: All Actions   DEFENDANTS SYNAGRO
21                                    TECHNOLOGIES, INC., SYNAGRO-
                                      WWT, INC., AND NURSERY
22                                    PRODUCTS, LLC'S CORRECTED
                                      MOTION TO DISMISS THE FIRST
23                                    AMENDED COMPLAINT [DKT NO.
                                      235]; DECLARATION OF NATASHA
24                                    N. SERINO**
25
26                                    Date:     March 29, 2024
                                      Time:     1:30 p.m.
27                                    Judge:    Hon. Fernando L. Aenlle-Rocha
28

LAW OFFICES
COTCHETT,
PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**

## <u>TABLE OF CONTENTS</u>

I.   PRELIMINARY STATEMENT .................................................................. 1

II.  FACTUAL BACKGROUND ................................................................... 2

III. PROCEDURAL POSTURE ................................................................... 3

IV. STANDARD OF REVIEW.................................................................... 3

V.  ARGUMENT ........................................................................................ 4

   A.   Defendants improperly asserted new arguments in their Motion. ................... 4

   B.   Plaintiffs sufficiently alleged that Defendants Synagro Technologies and Synagro-WWT are liable for the wrongful conduct alleged in this case. ......... 6

   C.   Plaintiffs sufficiently alleged a cause of action for negligence......................... 8

   D.   Plaintiffs sufficiently alleged violation of California's Unfair Competition Law. ................................................................................................................ 11

   E.   Plaintiffs sufficiently pleaded causes of action for wrongful death, a survival action, and loss of consortium. ....................................................... 13

      1.   Plaintiffs Shan Mulligan and Lucille Riddle sufficiently alleged a cause of action for wrongful death. .......................................................... 13

      2.   Plaintiffs Riddle and Mulligan sufficiently alleged a survival action. ..... 14

      3.   Plaintiff Mulligan sufficiently pleaded a claim for loss of consortium based on the death of spouse Laura Manzo, which resulted from Defendants' release of contaminants. ......................................................... 15

   F.   Plaintiffs sufficiently alleged a cause of action for strict liability for ultrahazardous activity....................................................................................... 16

   G.   Plaintiffs sufficiently alleged causes of action for public and private nuisance. .......................................................................................................... 18

   H.   Plaintiffs have sufficiently alleged a cause of action for trespass.................... 20

VI. CONCLUSION ..................................................................................... 20

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**    i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................. 3, 4

*Barnes v. Black*,
   71 Cal.App.4th 1473 (1999) ...................................................................... 9

*Bass v. Facebook, Inc.*,
   394 F.Supp.3d 1024 (N.D. Cal. 2019)...................................................... 8

*Bautista v. Los Angeles*,
   216 F.3d 837 (9th Cir. 2000) ................................................................... 11

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................. 3, 4

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal.4th 163 (1999)............................................................................. 12

*City & Cnty. of San Francisco v. Purdue Pharma L.P.*,
   491 F.Supp.3d 610 (N.D. Cal. 2020)....................................................... 19

*City of Modesto Redevelopment Agency v. Superior Court*
   (2004) 119 Cal.App.4th 28 ...................................................................... 19

*Clarke v. Pacific Gas & Electric Company*,
   501 F.Supp.3d 774 (2020) ................................................................. 16, 17

*Davert v. Larson*,
   163 Cal.App.3d 407 (1985) ....................................................................... 9

*Edwards v. Post Transportation Co.*,
   228 Cal.App.3d 980 (Ct. App. 1991) ............................................. 16, 17, 18

*Gerritsen v. Warner Bros. Ent. Inc.*,
   116 F.Supp.3d 1104 (C.D. Cal. 2015)....................................................... 8

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**

ii

*Hahn v. Mirda*,
   147 Cal.App.4th 740 (2007) ................................................................. 15

*Higgins v. Huhtamaki, Inc.*,
   No. 1:21-CV-00369-NT, 2022 WL 2274876 (D. Me. June 23, 2022) .............. 17, 18

*Ileto v. Glock Inc.*,
   349 F.3d 1191 (9th Cir. 2003) .............................................................. 19

*Jack v. Pearson*,
   No. 1:17-cv-0520 AWI SAB, 2018 WL 1567796 (E.D. Cal. Mar. 30,
   2018) ................................................................................................... 10

*Kwikset Corp. v. Superior Court*,
   51 Cal.4th 310 (2011) ......................................................................... 12

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014) ............................................................... 4

*Lozano v. AT&T Wireless Servs., Inc.*,
   504 F.3d 718 (9th Cir. 2007) ............................................................... 12

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ............................................................... 4

*McKell v. Wash. Mut., Inc.*,
   142 Cal.App.4th 1457 (2006) ............................................................... 12

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
   521 F.3d 1097 (9th Cir. 2008) ............................................................... 4

*Newman v. OneWest Bank, FSB*,
   No. EDCV 10-0064 ............................................................................... 5

*Quiroz v. Seventh Ave. Ctr.*,
   140 Cal.App.4th 1256 (2006) ............................................................... 13

*Ryan v. Greif, Inc.*,
   --- F.Supp.3d---, No. 22-CV-40089-MRG, 2023 WL 8828220 (D.
   Mass. Dec. 21, 2023) ........................................................................... 17

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**

iii

*San Francisco Herring Ass'n v. Pac. Gas & Elec. Co.*,

    81 F.Supp.3d 847 (N.D. Cal. 2015) ..................................................................... 17

*Slaughter v. Legal Process & Courier Serv.*,

    162 Cal.App.3d 1236 (1984) ................................................................................ 9

*Sprecher v. Adamson Companies*,

    30 Cal.3d 358 (1981) ............................................................................................ 9

*Tatung Co., Ltd. v. Shu Tze Hsu*,

    217 F.Supp.3d 1138 (C.D. Cal. 2016) ............................................................. 5, 6, 7

*In re Tobacco II Cases*,

    46 Cal.4th 298 (2009) .......................................................................................... 12

*U.S. v. Sierra Pacific Industries*,

    879 F.Supp.2d 1117 (E.D. Cal. 2012) ................................................................. 9

**Statutes**

Bus. & Prof. Code § 17200, *et seq.* ..................................................... 5, 11, 12, 13

Cal. Civ. Code § 1714(a) ......................................................................................... 9

Cal. Code of Civ. Proc. § 377.30 .......................................................................... 14

Cal. Code of Civ. Proc. § 377.60 ..................................................................... 13, 14

Cal. Evid. Code § 669 ............................................................................................. 10

Cal. Code of Regs, tit. 22, § 66264.31 ................................................................... 10

Fed. R. Civ. P. 8(a) ............................................................................... 3, 11, 18, 19

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 4

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**

iv

Plaintiffs bring this Opposition to the Corrected Motion to Dismiss (the "Motion") Plaintiffs' First Amended Complaint ("FAC") filed by Synagro Technologies, Inc. ("Synagro Technologies"), Synagro-WWT, Inc. ("Synagro-WWT") and Nursery Products, LLC's ("Nursery Products") (collectively, "Defendants") at ECF No. 235. The Motion follows Defendants' previously-filed Joinder (the "Joinder") (ECF No. 220) to now-dismissed Defendant The Goldman Sachs Group, Inc.'s ("GS") Motion to Dismiss ("GS Motion") (ECF No. 219). The Court allowed Defendants to file the Corrected Motion, with no new arguments, after Plaintiffs dismissed GS from this action. ECF No. 234. The Motion is without merit and should be denied.

## I.   **PRELIMINARY STATEMENT**

Plaintiffs are 643 individuals named in the FAC at Exhibit A (ECF No. 198-1) and will be referred to collectively hereinafter as "Plaintiffs". Plaintiffs filed this action to seek redress for the harms they suffered when they were exposed to elevated levels of burnt biosolids and other contaminants emitted from the Nursery Products Hawes Composting Facility (the "Facility") located in Helendale, California, and other dump sites in the area, following a fire that burned for days and continued to smolder for weeks on end (the "Fire"). Plaintiffs allege that Defendants are each liable—directly and as members of a joint venture—for Plaintiffs' injuries. ¶ 12-14, 17, 19-26, 32-36.[1]

The basic facts of Plaintiffs' case are well-established. Plaintiffs have laid out in considerable detail Defendants' failure to properly maintain the Facility to prevent foreseeable incidents such as the Fire, as well as their failure to timely respond to the Fire, leading to Plaintiffs' significant physical and economic injuries.

As an initial matter, Defendants improperly asserted new arguments in the instant Motion. Defendants' Joinder made no arguments as to Plaintiffs' claims for indirect liability, negligence, California's Unfair Competition Law, wrongful death, survivor action, or loss of consortium and did not properly incorporate the arguments in the GS

---

[1] References to "¶     " are to paragraphs within the FAC, ECF No. 198.

Motion into their Joinder.  As such, these arguments should be disregarded by the Court as they are improperly newly asserted.

## II.  FACTUAL BACKGROUND

The FAC describes in detail Defendants' acts and omissions that directly caused Plaintiffs' harms.   This case arises from the sickening of hundreds of residents throughout the unincorporated town of Hinkley, California, the City of Barstow, California and in neighboring communities and cities beginning on May 28, 2022, due to Defendants' negligent disregard for safety.  ¶ 1.  A large and uncontrolled fire broke out at the Facility on May 28, 2022, burning for days and smoldering for weeks.  ¶ 2. The Fire released burnt biosolids and other toxins into the air, exposing hundreds of individuals, including Plaintiffs, to elevated levels of burnt biosolids and other contaminants emitted from the Facility and other unauthorized dump sites in the area ("Dump Sites").  ¶ 2.

The Facility, which is jointly owned and operated by Defendants, consists in part of an open-air pit to compost two forms of waste from across Southern California: biosolids and green materials.  ¶ 3.  Defendants have accepted, housed, and processed other toxic waste and excess waste, in violation of their permits to operate and in violation of local, state, and federal laws and regulations.  ¶¶ 47, 52-53, 58-66. Defendants have also engaged in off-site dumping of waste and/or material from their operation, at various Dump Sites in and around the Facility.  ¶¶ 52, 88-91.  Dump Sites include but are not limited to the Facility and other locations in the area used by Defendants as part of its operations.  ¶ 3.

Defendants were further wholly unprepared for a fire at the Facility, despite the foreseeable risk, as evidenced not only by Plaintiffs' injuries, but also by the numerous citations for violations they received from the San Bernardino Fire Department.  ¶¶ 66-74.  They had no operational water trucks on site at the Facility when the Fire broke out and delayed calling for help for several hours.  ¶ 81.  Plaintiffs suffered significant

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**

2

physical and economic injuries due to Defendants' acts and negligence, which caused the Fire, as well as Defendants' failure to timely respond to the Fire.  ¶ 10.

## III.   **PROCEDURAL POSTURE**

Plaintiffs brought these consolidated actions against GS, Synagro Technologies, Synagro-WWT, and Nursery Products in San Bernardino Superior Court in fall 2022. The Defendants removed the actions to this Court, and following scheduling stipulations, Plaintiffs filed the FAC on December 8, 2023.  ECF No. 198.  GS filed a Motion to Dismiss the FAC on January 22, 2024, and Defendants filed a Notice of Joinder to the GS Motion the same day.  ECF Nos. 219, 220.  Plaintiffs voluntarily dismissed GS as a defendant.  ECF No. 228.  On the day that Plaintiffs filed their response and opposition to Defendants' Joinder, Defendants sought ex parte relief allowing them to file an amended motion to dismiss, which Plaintiffs opposed.  ECF Nos. 231-233.  The Court ordered that Defendants could file a corrected motion to dismiss "incorporating existing legal arguments in both motions (Dkts. [219], [220]), but may not include new arguments."  ECF No. 234.  Defendants filed their corrected Motion on March 8, 2024 (ECF No. 235), and Plaintiffs now bring the instant Opposition.

## IV.   **STANDARD OF REVIEW**

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief…"  Fed. R. Civ. P. 8(a).  A complaint is not required to contain "detailed factual allegations" or "heightened fact pleading of specifics," but is required to plead "only enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).  "The plausibility standard is not akin to a 'probability requirement,'" but simply "asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard is satisfied when the plaintiff pleads factual content that "allows the court to draw the reasonable inference" that the defendant is liable for the misconduct alleged,

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**

3

1  *id.*, or when the plaintiff otherwise pleads facts that "raise a right to relief above the
2  speculative level," *Twombly*, 550 U.S. at 570.

3      Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a complaint for
4  failure to state a claim, but the court will grant such a motion only where the complaint
5  lacks a cognizable legal theory or sufficient facts to support one.  *Mendiondo v.*
6  *Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  A Fed. R. Civ. P.
7  12(b)(6) motion should be denied if the plaintiff's allegations "suggest that the claim has
8  at least a plausible chance of success," and "contain sufficient allegations of underlying
9  facts to give fair notice and to enable the opposing party to defend itself effectively."
10  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014).  At the pleadings stage plaintiffs
11  enjoy the benefit of the doubt; courts must "accept factual allegations in the complaint
12  as true and construe the pleadings in the light most favorable to the nonmoving party."
13  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

14      "Where a motion to dismiss is granted, a district court should provide leave to
15  amend unless it is clear that the complaint could not be saved by any amendment."
16  *Newman v. OneWest Bank, FSB*, No. EDCV10-0064AHMDTB, 2010 WL 797188, at
17  *3 (C.D. Cal. Mar. 5, 2010) (citing *Manzarek*, 519 F.3d at 1031).

18  **V.**  **ARGUMENT**

19      **A.**  **Defendants improperly asserted new arguments in their Motion.**

20      Defendants were permitted to file a corrected Motion asserting no new arguments.
21  ECF No. 234.  To the extent Defendants' Joinder did not include or incorporate certain
22  arguments from the GS Motion, any assertion of those arguments is now improper and
23  should be disregarded.  Put simply: Defendants failed to properly join the arguments
24  before, and now seek to improperly assert them as their own.

25      "When reviewing whether to allow a party to join in a motion, the court will allow
26  the joinder when either (1) the parties are so similarly situated that filing an independent
27  motion would be redundant, or (2) the party seeking joinder specifically points out:
28  which parts of the motion apply to the joining party, the joining party's basis for

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD
CASE NO. 5:22-cv-01866-FLA-SHK**

4

standing, and the factual similarities between the joining party and moving party that give rise to a similar claim or defense." *Tatung Co., Ltd. v. Shu Tze Hsu*, 217 F. Supp. 3d 1138, 1151 (C.D. Cal. 2016). Defendants' Joinder vaguely stated that they joined in the GS Motion, specifically as to GS' arguments regarding its direct liability, its alter ego or agency liability, and the adequacy of Plaintiffs' allegations supporting their claims for negligence, violation of California's Unfair Competition Law, wrongful death, survival action, and loss of consortium. Joinder at 2:1-3:25. The Joinder separately attempted to move to dismiss "Plaintiffs' other causes of action alleged against only [] Defendants." *Id*. at 3:26-4:1.

The Joinder made no separate arguments as to how Defendants are similarly situated to GS such that their filing a separate motion would have been redundant. Nor did the Joinder address any factual similarities between Defendants and GS that give rise to the same defense. As to direct liability and indirect liability, the Joinder included some case citations and references to the exhibits to the Motion. Joinder at 2:5-3:20. However, the Joinder failed to draw any factual connection between Defendants and GS. *Id*. at 2:28. Indeed, GS' arguments as to indirect liability were based on distinctions between itself and Defendants. GS Mot. at 6-15. GS denied ownership of or corporate connection to Defendants (GS Mot. at 8:26-27), denied any affiliation between itself and Synagro Technologies' board of directors (GS Mot. at 11:4-7) and denied having any control over Defendants (GS Mot. at 14:9-12). Because these arguments were not properly incorporated into Defendants' Joinder, they should be considered newly (and improperly) asserted in the Motion.

Similarly, Defendants' Joinder also failed to make any arguments that Plaintiffs failed to state a claim for "each of the five claims asserted against all Defendants." Joinder at 3:21-25. Other than stating that these arguments "apply with equal force" to Defendants, there are no separate arguments as to the similarities between Defendants and GS or why those arguments apply to Defendants. *Id*. Again, the GS Motion relied on distinctions between GS and Defendants and only argued that Plaintiffs failed to state

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**

5

a claim against GS.  GS Mot. at 15-21; 16:6-9 (GS denying involvement with the
Nursery Products facility); 18:12-14 (noting Plaintiffs do not allege Goldman Sachs
owns or operates the Nursery Products facility).  Again, Defendants' joinder in these
arguments spanned all of one sentence and failed to explain why or how GS' arguments
applied to them.  Joinder at 3:21-25; *see also*, *Tatung*, 217 F. Supp. 3d at 1151.

Therefore, Defendants' arguments in the Motion as to indirect liability,
negligence, California's Unfair Competition Law, wrongful death, survival action, and
loss of consortium have been improperly newly asserted and should be disregarded.
Defendants had every opportunity to make their own arguments and bring their own
motion before the initial deadline and failed to do so.

**B.    Plaintiffs sufficiently alleged that Defendants Synagro Technologies
and Synagro-WWT are liable for the wrongful conduct alleged in this
case.**

As described in section V.A., *supra*, the Court should disregard Defendants'
arguments related to direct liability.  Mot at 5:17-6:2. Regardless, Plaintiffs will address
Defendants' brief arguments in the Motion as to whether they sufficiently made factual
allegations that Defendants Synagro Technologies and Synagro-WWT are directly liable
for their injuries.

Plaintiffs specifically alleged that all Defendants share an ownership interest in
and control over the Facility and operate as a joint venture.  ¶¶ 19-25.  Plaintiffs also
made specific factual allegations that Synagro Technologies and Synagro-WWT[2] are
directly involved with the operation of the Facility and in control of the Facility.  ¶¶ 32-
36.  Plaintiffs further alleged that the Nursery Products/Facility Site Manager, Venny
Vasquez, is a Synagro employee who uses a Synagro email address.  ¶ 32.  Plaintiffs
also alleged three other specific Synagro employees—Craig Geyer, Jeffrey Faust, and
Layne Baroldi—were included in communications with government employees

---

[2] Unless otherwise specified, Synagro Technologies and Synagro-WWT will hereinafter
be referred to collectively as "Synagro".

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD
CASE NO. 5:22-cv-01866-FLA-SHK**                                            6

regarding the Facility. *Id.* Plaintiffs alleged that communications with government entities regarding the Facility sent by Mr. Vasquez were sent on Synagro letterhead and that a 2020 groundwater monitoring report for the Facility was "Prepared for Synagro Technologies". ¶ 33. Plaintiffs alleged that Synagro "Area Plant Director" Craig Geyer sent a letter regarding the facility's groundwater monitoring report. ¶ 34. Plaintiffs alleged that in 2022, Synagro employee Layne Baroldi sent correspondence on behalf of Synagro-WWT to the Lahontan Regional Water Quality Control Board regarding the Facility. ¶ 35. Plaintiffs alleged that in June 2022, just weeks after the Fire, Synagro employees Craig Geyer and Venny Vasquez signed and submitted the Facility's Application for Solid Waste Facility Permit and Waste Discharge Requirements to the State of California, as the Facility Operator. ¶ 36. Plaintiffs alleged that the compost created at the Facility is sold as Synagro's branded fertilizer. ¶ 46. Plaintiffs have, therefore, sufficiently alleged that Synagro is directly liable for Plaintiffs' injuries as an owner and operator of the Facility.

Defendants also attempt to improperly assert new arguments related to indirect liability. Mot. at 6:3-7:18. Because Plaintiffs have sufficiently pleaded Synagro's direct liability, the Court need not address its arguments as to indirect liability. Regardless, Plaintiffs have also sufficiently pleaded facts to show an alter ego relationship between Synagro and Nursery Products.

Synagro's argument that Plaintiffs have only pleaded overlap of personnel between Nursery Products and Synagro is untrue. Defendants cite to cases which stand for the principle that the mere presence of overlapping officers or directors is insufficient to establish agency or alter ego liability. Mot. at 6:22-27. However, here, Plaintiffs have alleged personnel and employees on the ground at the Facility, operating the Facility, acting on behalf of the Facility, and corresponding with government entities on behalf of the Facility are Synagro employees. ¶¶ 32-36. These allegations go far beyond mere overlap of high-level officers or directors. Further, Plaintiffs alleged that correspondence on behalf of the Facility was sent by Synagro employees (with Synagro email addresses)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**

1    on Synagro letterhead.  ¶¶ 32-35.  Defendants are also represented by the same counsel

2    and have made all filings in this case jointly, a factor which tends to show a unity and

3    sameness between the Defendants.  *See, e.g.*, ECF Nos. 220, 231, 235; *see also Gerritsen*

4    *v. Warner Bros. Ent. Inc*., 116 F. Supp. 3d 1104, 1137 (C.D. Cal. 2015) (quoting *Zoran*

5    *Corp. v. Chen*, 185 Cal. App. 4th 799, 811-12 (2010)).

6        Synagro also improperly newly argues that Plaintiffs failed to allege it had control

7    over the Facility, shared profits, or ownership interest.  Mot. at 6:16-19, 7:10-8:15.

8    Indeed, the Motion itself fails to make any meaningful argument other than a recitation

9    of case law and arguments related to personnel overlap.  *Id*. at 8:1-15.  However,

10   Plaintiffs do allege a unity and sameness between Defendants, including Synagro's

11   direct ownership and control over Nursery Products and operations of the Facility.  *See*

12   ¶¶ 13-14, 19, 23-25, 32-36, 46.  Defendants' own Exhibit B in support of their Motion

13   shows that Synagro employees submitted and signed off on Nursery Products'

14   Application for Solid Waste Facility Permit and Waste Discharge Requirements.  ECF

15   No. 235-1 at 8-11.

16       Plaintiffs therefore alleged a unity and sameness between Synagro and Nursery

17   Products such that one is liable for the actions of the other.

18       **C.    <u>Plaintiffs sufficiently alleged a cause of action for negligence.</u>**

19       Under California law, the requisite elements of a negligence claim are: "(1) the

20   defendant had a duty, or an 'obligation to conform to a certain standard of conduct for

21   the protection of others against unreasonable risks,' (2) the defendant breached that duty,

22   (3) that breach proximately caused the plaintiff's injuries, and (4) damages."  *Bass v.*

23   *Facebook, Inc*., 394 F. Supp. 3d 1024, 1038-1039 (N.D. Cal. 2019).  The FAC plausibly

24   alleges each of these elements as to Defendants.

25       First, Defendants raised no independent arguments as to Plaintiffs' negligence

26   claim prior to the instant Motion and they are therefore improperly newly asserted here.

27   *See*, section V.A., *supra*.  Regardless, the arguments are without merit because Plaintiffs

28   alleged Defendants' duty to operate the Facility and Dump Sites in a reasonably safe

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD
CASE NO. 5:22-cv-01866-FLA-SHK**

8

condition, and their failure to do so by accepting excess tonnage of waste, accepting unauthorized materials, allowing accumulation of feedstock piles, failing to control odor, and failing to provide fire control.  ¶¶ 75, 120.

With respect to duty, Plaintiffs sufficiently alleged that Defendants owed a duty to operate the Facility and Dump Sites in a reasonably safe manner, to take reasonable steps to minimize the risk of fire and to prevent conditions at the Facility that would cause harm to Plaintiffs or their properties. ¶ 117.  This duty is supported by Defendants' ownership and control of the Facility; and the foreseeability of harm.  "[A] duty to exercise due care can arise out of possession alone." *U.S. v. Sierra Pac. Indus.*, 879 F. Supp. 2d 1117, 1123 (E.D. Cal. 2012) (holding Plaintiffs presented sufficient evidence to show landowners owed a duty of care to prevent fire based on their control over the property and oversight of the fire plan); *Sprecher v. Adamson Companies*, 30 Cal. 3d 358, 367 (1981).  "The law is well settled that an owner or occupier of land is required to exercise ordinary care in the management of his property and the breach of such duty constitutes actionable negligence."  *Davert v. Larson*, 163 Cal. App. 3d 407, 410 (Ct. App. 1985); Cal. Civ. Code § 1714(a).  This duty extends to dangerous conditions that arise offsite as a result of activities on the property owner's land.  *Barnes v. Black*, 71 Cal. App. 4th 1473, 1478 (1999).  Here, Plaintiffs allege Nursery Products, Synagro-WWT, and Synagro Technologies jointly operated and controlled the composting Facility, giving rise to a duty to ensure conditions on their property do not harm others offsite or their property.  ¶¶ 25, 32-36, 44, 117; *see also*, section V.B., *supra*.

The foreseeability of harm further supports Defendants' duty to operate their Facility with such reasonable care to prevent the release of contaminants and prevent injuries to the surrounding public.  ¶ 117.  "Whether a defendant owes a duty of care is a question of law.  Its existence depends upon the foreseeability of the risk and upon a weighing of policy considerations for and against imposition of liability."  *Slaughter v. Legal Process & Courier Serv.*, 162 Cal. App. 3d 1236, 1249 (Ct. App. 1984).  Due to the nature of waste processed at the Facility and the contaminants involved, Defendants'

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**

9

operation involves the storage of sewage, waste, and substances containing unsafe materials.   ¶ 50; *see also*, section V.F., *infra*.   "If not operated in a reasonably safe manner, there is a foreseeable risk of harm to the surrounding public, including but not limited to through the release of smoke, noxious or offensive gasses…" and contaminants.   ¶¶ 50, 124-125, 137.

Plaintiffs allege that despite their obligations to maintain the Facility in a reasonably safe manner, as outlined above, Defendants breached their duties by accepting unpermitted forms of waste, accepting excessive amounts of waste, operating the Facility and Dump Sites in a manner that resulted in offensive matters emanating from the Facility, and failing to minimize the risk of fire.   ¶¶ 119-120.   Plaintiffs allege that in April and May 2022, Defendants were cited twelve times for accepting excessive wet waste (more than 2,000 wet tons per day).   ¶ 53.   Defendants further allowed waste to accumulate at the Facility and processed unpermitted forms of waste, such as raw sewage and mixed construction debris.   ¶¶ 61-62.   CalRecycle stated in its June 23, 2022 inspection report that "the piles [of compost] were large enough that prevent proper temperature monitoring…"   ¶ 74.

Defendants' breaches are bolstered by their violation of regulations specifically directed at their conduct.   ¶¶ 59-65.   "As codified in California Evidence Code § 669, negligence per se provides that "statutes may be admitted to establish a standard or duty of care in negligence actions."   *Jack v. Pearson*, No. 1:17-cv-0520 AWI SAB, 2018 WL 1567796, at *4 (E.D. Cal. Mar. 30, 2018) (quoting *Elsner v. Uveges*, 34 Cal. 4th 915, 923 (2004)).   For example, California Code of Regulations, tit. 22, section 66264.31, requires that operators of hazardous waste disposal facilities be operated to minimize the possibility of fire.   Section 66264.1 further provides that the purpose of the Chapter is to establish minimum standards which define the acceptable management standards of hazardous waste for owners and operators of said facilities.   In violation of this statute, Defendants failed to provide fire prevention.   ¶ 63.   They also failed to address maximum stockpile dimensions or properly ventilate piles of compost.   ¶¶ 71-73.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD CASE NO. 5:22-cv-01866-FLA-SHK

10

As to the final two elements of negligence, Plaintiffs allege that as a direct result of Defendants' failures at the Facility, on May 28, 2022, a pile of compost ignited leading to a fire that spanned half of the Facility, caused contaminants to enter Plaintiffs' properties, and caused illnesses among Plaintiffs.  ¶¶ 79, 99-100, 103-107, 129.  As alleged in the FAC, Plaintiffs sustained damages in that they inhaled toxic gases resulting in personal injuries including but not limited to vomiting, nausea, and respiratory problems.  ¶¶ 129-131.  In other words, Defendants' breaches caused harm to Plaintiffs, resulting in the alleged damages.  ¶¶ 105-107.  This is a classic form of negligence.

Finally, Plaintiffs satisfy Fed. R. Civ. P. 8(a) because they allege that all Plaintiffs suffered these physical injuries and inhaled noxious gases and contaminants.  *See* ¶¶ 10, 105, 129-130.  This case is therefore distinguishable from *Bautista v. Los Angeles*, 216 F.3d 837, 840 (9th Cir. 2000), which involved claims for employment discrimination and therefore required the plaintiffs to plead individualized facts showing discrimination on the basis of age, race or disability.[3]

For the foregoing reasons, Plaintiffs adequately alleged Defendants had a duty, breached that duty, and proximately caused Plaintiffs' injuries resulting in damage.

### D.   Plaintiffs sufficiently alleged violation of California's Unfair Competition Law.

First, as stated above, the Court should not consider Defendants' arguments as to Plaintiffs' cause of action under California's Unfair Competition Law ("UCL") as these arguments are newly asserted.  *See*, section V.A., *supra*.  Regardless, Plaintiffs alleged sufficient facts to state a claim under the UCL.

---

[3] The statement in ¶ 11 (i.e. "the exact names and capacities in which Plaintiffs are suing may be presently unknown.") does not concede a defect but is meant to address potential information that may not yet be known to Plaintiffs.  For example, several Plaintiffs are ill and to the extent any pass away, their capacities may change.  Alternatively, some Plaintiffs are minors and to the extent they come of age during the litigation, their capacities may also change.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**                                                            11

California Business and Professions Code section 17200, *et seq*. creates a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. Each prong of the UCL provides a separate and distinct theory of liability. *Lozano v. AT & T Wireless Servs., Inc*., 504 F.3d 718, 731 (9th Cir. 2007). The "unlawful" prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co*., 20 Cal. 4th 163, 180 (1999). "A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." *McKell v. Washington Mut., Inc*., 142 Cal. App. 4th 1457, 1473 (2006). For the "fraudulent" prong, Plaintiffs' FAC must allege facts showing "actual reliance on the allegedly deceptive or misleading statements," *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326 (2011), and that "the misrepresentation was an immediate cause of the injury-producing conduct," *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

 "There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." *Kwikset*, 51 Cal. 4th at 323.

Plaintiffs alleged that Defendants engaged in unlawful business practices by accepting and processing materials unauthorized by permit, collecting materials in excess of their permit, operating in a way that failed to control odor, failing to provide fire prevention and keep records of fires, and unlawfully dumping materials off-site, among other violations of local, state, and federal laws and regulations. ¶¶ 53, 58-67, 71, 90, 217. Plaintiffs further alleged economic injury resulting from Defendants' unfair and unlawful business practices. ¶¶ 100, 103. Plaintiffs further alleged diminished present and future property interest as a result of Defendants' unfair and unlawful

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**

12

business practices.  ¶¶ 97, 103, 226.  These facts, when assumed as true, support a claim under the UCL.

**E.**  **Plaintiffs sufficiently pleaded causes of action for wrongful death, a survival action, and loss of consortium.**

Like Defendants' arguments related to causes of action for negligence and the UCL, the Court should disregard their arguments as to wrongful death, the survival action, and loss of consortium, as they are improper new arguments. *See*, section V.A., *supra*.  Regardless, Plaintiffs sufficiently alleged causes of action for each.

**1.**  **Plaintiffs Shan Mulligan and Lucille Riddle sufficiently alleged a cause of action for wrongful death.**

Plaintiffs agree that "[t]he elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1263 (2006).  California Code of Civil Procedure section 377.60 sets forth the specified heirs who are entitled to recover under this framework, which include, among others, surviving spouses and parents under certain circumstances. Plaintiffs satisfy these requirements by alleging that: (1) Defendants negligently owned and operated the Facility (¶ 118) causing injury; (2) Defendants' actions resulted in the death of the Decedent (¶¶ 237-238); and (3) Plaintiffs suffered loss of society, love, support, and financial support (¶ 242).

For the reasons stated above, Plaintiffs adequately pled negligence claims against Defendants.  Section V.C., *supra*.  Plaintiffs Mulligan and Riddle allege that the Decedent (Laura Manzo) suffered physical injuries as a result of Defendants' release of smoke, offensive gases, pollutants and toxins from the Facility and Dump Sites.  ¶¶ 237-238.  Plaintiffs further allege that these physical injuries and Defendants' conduct, caused or contributed to the death of Decedent.  ¶ 238.

As to the resulting death and the identity of the Decedent, Plaintiffs note that the wrongful death and survival actions were brought only by Plaintiffs Lucille Riddle and

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**

13

1    Shan Mulligan, individually and as Administrator of the Estate of Laura Manzo, which
2    necessarily implies that Laura Manzo is the Decedent.  While Plaintiffs acknowledge
3    the FAC could have more explicitly identified Laura Manzo as the Decedent, Plaintiffs'
4    Counsel confirmed the identity of the Decedent to Defendants' counsel during a meet
5    and confer prior to the filing of the GS Motion.  Serino Dec. at ¶ 2.[4]  During this call,
6    Plaintiffs also identified Plaintiff Shan Mulligan as the Decedent's spouse and Lucille
7    Riddle as the Decedent's mother.  *Id*.  Plaintiff Mulligan is also listed as Laura Manzo's
8    husband on page 75 of Exhibit A to the FAC, which lists all Plaintiffs.  As such,
9    Defendants certainly had notice of the Decedent, the Plaintiffs bringing the wrongful
10   death claim, and their relationship to the Decedent.  Moreover, both Plaintiff Mulligan
11   and Plaintiff Riddle are heirs within the meaning of Code of Civil Procedure section
12   377.60, (a) and (b).  Based on the parties' meet and confer discussion and the Motion,
13   Defendants fail to further elucidate the standing issues that warrant dismissal.

14              **2.    Plaintiffs Riddle and Mulligan sufficiently alleged a survival**
15                      **action.**

16          Plaintiffs Riddle and Mulligan also adequately stated a survival action against
17   Defendants related to Decedent Laura Manzo.  California Code of Civil Procedure
18   section 377.30 allows a decedent's personal representative or successor in interest to
19   bring a cause of action on behalf of the decedent's estate.  Here, Plaintiffs Mulligan and
20   Riddle have brought a survival action on behalf of Decedent Laura Manzo and the FAC
21   explicitly states Plaintiffs are "representatives for Decedent's estate and/or are
22   authorized, as successor in interest, to pursue any and all legal claims for damages…"
23   ¶ 247.  As with the wrongful death claim, the Estate of Laura Manzo is identified in the
24   Complaint and Plaintiffs' Counsel confirmed the identity of the Decedent and her
25   relationship to Plaintiffs Mulligan and Riddle during a meet and confer prior to the filing
26   of the GS Motion.  Serino Dec. at ¶ 2.  Based on these discussions, Plaintiffs believed

27
28   [4] "Serino Dec." refers to the Declaration of Natasha N. Serino filed concurrently herewith.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**                    14

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

1  this resolved the issue and did not believe Defendants were seeking more information.

2  If necessary, however, Plaintiffs can amend the complaint to include additional factual

3  allegations regarding Plaintiffs' relationship to the Decedent, the date and place of death,

4  and the status of any estate.

5        **3.**     **Plaintiff Mulligan sufficiently pleaded a claim for loss of**

6                **consortium based on the death of spouse Laura Manzo, which**

7                **resulted from Defendants' release of contaminants.**

8        A loss of consortium claim has four elements: "(1) a valid and lawful marriage

9  between the plaintiff and the person injured at the time of the injury; (2) a tortious injury

10  to the plaintiff's spouse; (3) loss of consortium suffered by the plaintiff; and (4) the loss

11  was proximately caused by the defendant's act." *Hahn v. Mirda*, 147 Cal. App. 4th 740,

12  746 n.2 (2007).  Plaintiff Mulligan satisfies these elements.

13        As to the first element, Plaintiff Shan Mulligan brings a claim for loss of

14  consortium related to the death of his wife, Laura Manzo.  Plaintiff is specifically

15  identified as the husband of Laura Manzo on page 75 of the Plaintiff list included in

16  Exhibit A to the FAC.  While Plaintiffs acknowledge the relationship could have been

17  expressly alleged under the loss of consortium cause of action, this information was also

18  provided to Defendants' counsel during a meet and confer prior to Defendants' filing of

19  the Motion to Dismiss.  Serino Dec. at ¶ 2.  Based on these discussions, Plaintiffs

20  believed this issue was resolved to their satisfaction for the pleading stage.  *Id*.  If

21  necessary, however, Plaintiffs can amend the complaint to explicitly identify Shan

22  Mulligan as the husband of Decedent Laura Manzo under the loss of consortium cause

23  of action.

24        As to the tortious injury, Plaintiff Mulligan brought a wrongful death claim

25  alleging that Decedent Laura Manzo "suffered physical impacts and injury" as a result

26  of Defendants' conduct (¶ 238) and ultimately died as a result of Defendants' release of

27  contaminants from their Facility (¶ 237).  Plaintiff also properly alleged a survival action

28  on behalf of Laura Manzo and negligence claims, as further detailed above, which

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**

15

satisfies the tortious injury requirement.  As to the last two elements, the FAC alleged loss of consortium as a result of Defendants' conduct, including their concealment of dangers at the Facility and Dump Sites and their release of contaminants into the air.  ¶¶ 256-258.  As a result, Plaintiff Mulligan continues "to suffer the loss of support, service love, companionship, affection, society, intimate relations, and other elements of consortium…"  ¶ 256.  Accordingly, Plaintiff Mulligan's loss of consortium claim should not be dismissed.

**F.**     **<u>Plaintiffs sufficiently alleged a cause of action for strict liability for ultrahazardous activity.</u>**

Defendants cannot show as a matter of law that their operation of the Facility was not an ultrahazardous activity subject to strict liability.[5]  Determinations regarding whether an activity should be classified as ultrahazardous require fact-specific analysis regarding the activity in question.  California law ordinally requires weighing the following factors to designate an activity as ultrahazardous:

(1) existence of a high degree of risk of some harm to the person, land or chattels of others;

(2) likelihood that the harm that results from it will be great;

(3) inability to eliminate the risk by the exercise of reasonable care;

(4) extent to which the activity is not a matter of common usage;

(5) inappropriateness of the activity to the place where it is carried on; and

(6) extent to which its value to the community is outweighed by its dangerous attributes.

*Edwards v. Post Transportation Co.*, 228 Cal. App. 3d 980, 985 (Ct. App. 1991); *see also Clarke v. Pac. Gas & Elec. Co.*, 501 F. Supp. 3d 774, 790 (N.D. Cal. 2020).  "The

---

[5] To the extent Defendants attempt to make any arguments as to Plaintiffs' failing to specify individual injuries as a reason this cause of action should be dismissed, that argument would be improper as it was newly asserted in the Motion.  Mot. at 12:21. Regardless, Plaintiffs have addressed this argument.  *See* section V.C., *supra*.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD
CASE NO. 5:22-cv-01866-FLA-SHK**

16

1   first three [of these] factors ... pertain ... to the characteristics of the activity itself and

2   would, in the usual case ... require establishment by evidence introduced at trial."

3   *Edwards*, 228 Cal. App. 3d at 986 (examining expert testimony presented at trial). Given

4   the inherently factual nature of the determination whether an activity is ultrahazardous,

5   it would be inappropriate to resolve this determination on a motion to dismiss. *See id.*;

6   *accord*, *generally*, *San Francisco Herring Ass'n v. Pac. Gas & Elec. Co.*, 81 F. Supp.

7   3d 847, 865-66 (N.D. Cal. 2015). Indeed, such a claim should only be dismissed at the

8   pleadings stage if it is not plausibly pleaded. *Clarke*, 501 F. Supp. 3d at 791.

9       Biosolids have been considered ultrahazardous by Courts across the country. At

10   the very least, the inquiry as to whether composting or handling biosolids is

11   ultrahazardous demands fact discovery. The Court in *Ryan v. Greif, Inc.*, --- F. Supp.

12   3d---, No. 22-CV-40089-MRG, 2023 WL 8828220, at *19 (D. Mass. Dec. 21, 2023),

13   very recently held that the plaintiffs adequately pleaded the defendants' operation of a

14   compost facility was an ultrahazardous activity. The plaintiffs in *Ryan* alleged the

15   defendants received, improperly disposed, and repurposed toxic materials. *Id.* Here,

16   similarly, Plaintiffs alleged that Defendants are engaged in "handling, transporting,

17   housing, composting, and distributing biosolids, including human feces, solid waste,

18   sewage, green waste, and/or other substances containing flammable and toxic

19   materials[.]" ¶¶ 50, 145.

20       Further, the Court in *Higgins v. Huhtamaki, Inc.*, No. 1:21-CV-00369-NT, 2022

21   WL 2274876, at *12 (D. Me. June 23, 2022), declined to make a finding as to whether

22   the Defendant's use and disposal of biosolids could be considered ultrahazardous at the

23   pleadings stage because it "must rely on factual information, which has not yet been

24   developed."

25       Additionally, the proximity of the Facility and Dump Sites to residential areas

26   supports a finding that Defendants' operations are ultrahazardous. *See Edwards*, 228

27   Cal. App. 3d at 986 (observing that "drilling an oil well in a residential district" is not

28   analogous to the use of chemicals in modern manufacturing plans), *citing Green v. Gen.*

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD
CASE NO. 5:22-cv-01866-FLA-SHK**

17

*Petroleum Corp.*, 205 Cal. 328, 330 (1928).  Plaintiffs also alleged the proximity of both the Facility and Dump Sites to residential communities, and alleged the potential presence of "over 700 chemical and microbial pollutants in biosolids."  ¶¶ 49, 52, 92-97.

Plaintiffs further alleged that Defendants received multiple compliance violations from the San Bernardino County Fire Department for ongoing failures to properly label and store hazardous waste, "failure to make [a] hazardous waste determination," and failure to meet safety requirements for housing and handling hazardous waste.  ¶ 65.

In sum, whether the Facility's operations constitute an ultrahazardous activity, and is thus subject to strict liability, is a highly factual inquiry that should be resolved based on the consideration of evidence, not on a motion to dismiss.  *See Edwards*, 228 Cal. App. 3d at 986.  Regardless, Plaintiffs have sufficiently alleged facts to support a claim for strict liability for ultrahazardous activity.

### G.    Plaintiffs sufficiently alleged causes of action for public and private nuisance.

Defendants argue that Plaintiffs fail to state a claim for private nuisance because "[t]he 1AC contains no factual allegations describing injuries to any specific Plaintiff." Mot. at 14:4-5.  Defendants state no other reason for their contention that Plaintiffs failed to state a claim for private nuisance.  *Id*. at 13:22-14:10. Plaintiffs did, however, allege harm to their property interests.  As explained in section V.C., *supra*, Plaintiffs satisfy Fed. R. Civ. P. 8(a) by alleging injuries to all Plaintiffs.

Additionally, Plaintiffs alleged that smoke, soot, and burnt biosolids entered their properties and settled onto their land, causing damage to their personal and real property. ¶¶ 96-97, 107, 160, 176, 181.  As Defendants' own cases state, Plaintiffs must show "the defendant substantially and unreasonably interfered with plaintiff's use and enjoyment of the property."  Mot. at 13:22-24.  Plaintiffs sufficiently made such allegations in the FAC.  To the extent Defendants or the Court would like allegations specific to individual Plaintiffs related to their individual injuries, Plaintiffs would seek leave to amend the

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD CASE NO. 5:22-cv-01866-FLA-SHK

18

1   FAC to include such information.  However, Plaintiffs made sufficient allegations to

2   move past the pleadings stage and information as to individual Plaintiffs' damages will

3   be subject to discovery, once opened.

4        Defendants also argue Plaintiffs failed to state a claim for public nuisance because

5   "the 1AC does not sufficiently allege that Defendants' conduct was intentional,

6   negligent, or reckless, or that the Facility's operations were ultrahazardous."  Mot. at

7   15:12-14.   Plaintiffs have explained in sections V.C. and V.F., *supra*, that they

8   sufficiently alleged Defendants' conduct was negligent and ultrahazardous.

9        Further, a plaintiff can state a nuisance claim by, among other theories, alleging

10  that a defendant created a hazardous condition, assisted in creating a system that caused

11  hazards, or promoted conduct that resulted in nuisance.   *See e.g., City & Cnty. of San*

12  *Francisco v. Purdue Pharma L.P.,* 491 F. Supp. 3d 610, 675-76 (N.D. Cal. 2020)

13  (denying motion to dismiss and holding that Defendants' affirmative conduct created

14  hazardous conditions); *City of Modesto Redevelopment Agency v. Superior Ct.*, 119 Cal.

15  App. 4th 28, 40-41 (2004), *as modified on denial of reh'g* (June 28, 2004) (those who

16  create or assist in creating a system that causes hazardous waste to be disposed of

17  improperly...can be liable under nuisance law); *Ileto v. Glock Inc.,* 349 F.3d 1191, 1199,

18  1211, n. 26 (9th Cir. 2003) (upholding a public nuisance claim against gun

19  manufacturers and distributors based on affirmative conduct that created and promoted

20  an illegal secondary market for guns).  Plaintiffs have made such allegations here.  *See*

21  sections V.C. and V.F., *supra*.

22        Finally, Defendants also repeat the argument that Plaintiffs failed to state a claim

23  for public nuisance because they did not allege injuries specific to any individual

24  plaintiff.  Mot. at 15:14-16.  As stated above, Plaintiffs alleged harm to all plaintiffs,

25  which meets the standard under Fed. R. Civ. P. 8(a).  However, Plaintiffs would seek

26  leave to amend the complaint to include details related to specific Plaintiffs, to the extent

27  the Court is not satisfied they have been sufficiently alleged such that the parties can

28  move forward to discovery.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD
CASE NO. 5:22-cv-01866-FLA-SHK**                                    19

1    **H.      Plaintiffs have sufficiently alleged a cause of action for trespass.**

2    Defendants' argument that Plaintiffs failed to state a claim for trespass hinges on

3    essentially the same arguments made for nuisance—that Plaintiffs did not allege

4    individual injuries and that Plaintiffs did not sufficiently plead recklessness, negligence,

5    or ultrahazardous activity.   Mot. at 17:22-18:3. As stated above, Plaintiffs have

6    sufficiently alleged facts to support their injuries, and Defendants' negligence and

7    ultrahazardous activity.   Should the Court require more specific information as to

8    individual Plaintiffs, they would seek leave to amend the FAC to include such

9    information.

10   **VI.   CONCLUSION**

11   For the forgoing reasons, Plaintiffs respectfully request the Court deny

12   Defendants' Motion as to each cause of action, or in the alternative grant Plaintiffs leave

13   to amend the FAC.

16   Dated: March 20, 2024          **COTCHETT, PITRE & McCARTHY, LLP**

18   By:   _/s/ Hannah K. Brown_____
19           GARY A. PRAGLIN
             KELLY W. WEIL
20           HANNAH K. BROWN
             *Attorneys for Plaintiffs*
21

22   Dated: March 20, 2024          **SCHACK LAW GROUP**

24   By:   _/s/ Natasha N. Serino_____
25           ALEXANDER M. SCHACK
             NATASHA N. SERINO
26           SHANNON F. NOCON
             *Attorneys for Plaintiffs*
27

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD
CASE NO. 5:22-cv-01866-FLA-SHK**                                                        20

Dated: March 20, 2024         **LAW OFFICES OF GREGORY J. HOUT**

By: _/s/ Gregory J. Hout_____

GREGORY J. HOUT
*Attorney for Plaintiffs*

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**

21

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

### SIGNATURE ATTESTATION

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I, Hannah K. Brown, attest that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.


Dated: March 20, 2024                          _____*/s/ Hannah K. Brown*_____
                                                                  Hannah K. Brown

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**                          22

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,813 words, which complies with the word limit of L.R. 11-6.1.


Dated: March 20, 2024                           _____*/s/ Hannah K. Brown*_____
                                                            Hannah K. Brown

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS
THE FIRST AMENDED COMPLAINT; DECL. OF NATASHA N. SERINO; LEAD
CASE NO. 5:22-cv-01866-FLA-SHK**