1  GARY A. PRAGLIN (SBN 101256)
   gpraglin@cpmlegal.com
2  KELLY W. WEIL (SBN 291398)
   kweil@cpmlegal.com
3  THERESA E. VITALE (SBN 333993)
   tvitale@cpmlegal.com
4  CAILIN M. RUFF (SBN 358322)
   cruff@cpmlegal.com
5  **COTCHETT, PITRE & McCARTHY,**
   **LLP**
6  2716 Ocean Park Blvd., Suite 3088
7  Santa Monica, CA 90405
   Tel.: (310) 392-2008
8  Fax: (310) 392-0111

9  ALEXANDER M. SCHACK (SBN 99126)          GREGORY J. HOUT (SBN 135746)
   alexschack@schacklawgroup.com            ghout@houtlaw.com
10 NATASHA N. SERINO (SBN 284711)           **LAW OFFICES OF GREGORY J.**
   natashaserino@schacklawgroup.com         **HOUT**
11 SHANNON F. NOCON (SBN 316523)            12396 World Trade Drive Suite 206
   shannonnocon@schacklawgroup.com          San Diego, CA 92128
12 **SCHACK LAW GROUP**                     Tel.: (858) 946-6658
13 16870 West Bernardo Drive, Suite 400     Fax: (858) 946-6659
   San Diego, CA 92127
14 Tel.: (858) 485-6535
   Fax: (858) 485-0608
15

16 *Attorneys for Plaintiffs*

17            **UNITED STATES DISTRICT COURT**
             **CENTRAL DISTRICT OF CALIFORNIA**
18

19 IN RE NURSERY PRODUCTS              Lead Case No. 5:22-cv-01866-FLA-SHK
   LITIGATION
20                                     [*Assigned to: Hon. Fernando L. Aenlle-*
                                       *Rocha; Magistrate Judge: Hon. Shashi H.*
21 This Document Relates To: All Actions  *Kewalramani*]

22                                     **PLAINTIFFS' OPPOSITION TO**
                                       **DEFENDANTS SYNAGRO**
23                                     **TECHNOLOGIES, INC., SYNAGRO-**
                                       **WWT, INC., AND NURSERY**
24                                     **PRODUCTS, LLC'S MOTION TO**
                                       **DISMISS PLAINTIFFS SECOND**
25                                     **AMENDED COMPLAINT [DKT NO.**
                                       **260]**
26
                                       Date:    February 7, 2025
27                                     Time:    1:30 p.m.
                                       Judge:   Hon. Fernando L. Aenlle-Rocha
28

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' CORRECTED MOTION TO DISMISS**
**THE FIRST AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**

# TABLE OF CONTENTS

**PAGE NO.**

I.   INTRODUCTION ...................................................................... 1

II.   FACTUAL BACKGROUND ...................................................... 2

   A.   General Background .......................................................... 2

   B.   Synagro Technologies' Involvement at the Facility ............ 3

   C.   Synagro-WWT's Involvement at the Facility .................... 4

   D.   Defendants' Conduct Caused a Nuisance .......................... 4

   E.   Defendants' Conduct Resulted in a Wrongful Death .......... 5

III.   PROCEDURAL POSTURE ....................................................... 5

IV.   STANDARD OF REVIEW ......................................................... 5

V.   ARGUMENT ............................................................................ 6

   A.   Plaintiffs Sufficiently Alleged the Synagro Defendants Are Liable For Their Claims By Detailing Their Extensive Involvement in the Facility's Operations .................................................................... 6

      1.   The Synagro Defendants' Personnel Directly Participated in the Wrongdoing ...................................................... 7

      2.   The Synagro Defendants Participated in the Alleged Wrongdoing and Oversaw Operations of the Facility .... 9

      3.   Personnel Employed by the Synagro Defendants Directly Oversaw, Managed and Operated the Facility .............. 10

      4.   Defendants' Challenges to Direct Liability are Without Merit ........... 12

   B.   Plaintiffs Sufficiently Allege the Synagro Defendants are Indirectly Liable ............................................................. 13

      1.   Plaintiffs' SAC Sufficiently Pleads That Defendants Were Operating a Joint Venture. .................................. 13

      2.   Plaintiffs Adequately Allege That the Synagro Defendants and Nursery Products Acted as Alter-Egos ........... 15

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

C.    Plaintiffs Sufficiently Pled Their Claims for Public Nuisance .................17

D.    Plaintiff Shan Mulligan Stated Claims for Wrongful Death and Loss of
Consortium Based on Laura Manzo's Exposure to Harmful Toxins from
the Facility ...............................................................................................19

E.    Plaintiff Shan Mulligan Sufficiently Stated a Claim for Loss of Consortium
.................................................................................................................21

VI.    CONCLUSION ................................................................................22

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**    ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................. 5, 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................... 5, 6, 19

*Birke v. Oakwood Worldwide*,
  169 Cal. App. 4th 1540 (2009) .................................................... 2, 17, 18

*Chubchai v. AbbVie, Inc.*,
  599 F.Supp.3d 866 (N.D. Cal. 2022) ................................................... 12

*Federal Trade Commission v. Frontier Communications Corporation*,
  2021 WL 6540379 (C.D. Cal. Oct. 3, 2021) ........................................ 7, 8

*Gerritsen v. Warner Bros. Ent. Inc.*,
  116 F. Supp. 3d 1104 (C.D. Cal. 2015) ............................................ 15, 16

*Graveline v. Select Comfort Retail Corp.*,
  871 F. Supp. 2d 1033 (E.D. Cal. 2012) ................................................ 21

*JPV I L.P. v. Koetting*
  88 Cal. App. 5th 172, 195 (2023) ......................................................... 16

*Koll-Irvine Ctr. Prop. Owners Ass'n v. Cnty. of Orange*
  24 Cal. App. 4th 1036, 1040 (1994) ..................................................... 17

*Lattimore v. Dickey*,
  239 Cal. App. 4th 959 (2015) ............................................................... 19

*Levitt v. Yelp! Inc.*,
  765 F.3d 1123 (9th Cir. 2014) ................................................................ 6

*Lind v. City of San Luis Obispo*,
  109 Cal. 340 (1895) ........................................................................ 17, 18

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**

iii

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
  519 F.3d 1025 (9th Cir. 2008) ............................................................... 6

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) ............................................................... 6

*Newman v. OneWest Bank, FSB*,
  2010 WL 797188 (C.D. Cal. Mar. 5, 2010) ........................................... 6

*Noriega v. County of San Bernardino*,
  2024 WL 4799131 (C.D. Cal. Sept. 19, 2024)............................... 19, 20

*Rodriguez v. JP Morgan Chase & Co.*,
  809 F.Supp.2d 1291 (S.D. Cal. 2011) ............................................ 12, 13

*Sonora Diamond Corp. v. Superior Ct.*,
  83 Cal. App. 4th 523 (2000) .................................................. 15, 16, 17

*United States v. v. Bestfoods*,
  524 U.S. 51 (1998) ....................................................... 7, 8, 10, 12

*Unruh-Haxton v. Regents of Univ. of California*,
  162 Cal. App. 4th 343 (2008)........................................................ 13, 14

*Venuto v. Owens-Corning Fiberglas Corp.*,
  22 Cal. App. 3d 116 (Ct. App. 1971) .................................................. 18

*Estate of Wilson by and through Jackson v. County of San Diego*,
  2022 WL 789127 ................................................................................. 19

**Statutes**

Cal. Civ. Code § 3480........................................................................... 17

Cal. Civ. Code § 3493.............................................................. 2, 17, 18

Cal. Civ. Code § 377.34........................................................................ 20

Cal. Pub. Res. Code § 44002 ........................................................... 2, 3

**Rules**

Fed. R. Civ. P. 8(a) ......................................................................... 5, 19

Fed. R. Civ. P. 12(b)(6) ......................................................................... 6

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**    iv

I.      **INTRODUCTION**

Plaintiffs are 638 individuals who for at least six weeks in the Spring of 2022 were exposed to elevated levels of burnt biosolids and other contaminants emitted from the Nursery Products Hawes Composting Facility (the "Facility") located in Helendale, California, following a massive fire at the Facility. ¶¶ 2, 111-113.[1] Each of the three Defendants: Synagro Technologies, Inc. ("Synagro Technologies"), Synagro-WWT, Inc. ("Synagro-WWT") (collectively the "Synagro Defendants") and Nursery Products, LLC (collectively with the Synagro Defendants, "Defendants") were directly involved in operating the facility, and did so in a dangerous manner, failing to prevent the foreseeable fire.

Defendants' actions ultimately caused the emission of harmful contaminants into the surrounding area for months, causing Plaintiffs, who were exposed in their homes against their will, to suffer significant physical injuries. ¶¶ 12-14, 16, 18-25, 26-30.

Nonetheless, the Synagro Defendants move to dismiss Plaintiffs' SAC on the basis that they were wrongly named in this action, because they have no direct, or indirect liability for Plaintiffs' claims. Additionally, all Defendants move to dismiss Plaintiffs' SAC on the basis that Plaintiffs have failed to sufficiently allege their public nuisance claims, and that Plaintiff Shan Mulligan failed to allege sufficient facts to plead his Wrongful Death, Survival Action, and Loss of Consortium claims. The Motion is without merit and should be denied.

The SAC establishes the Synagro Defendants' direct liability based on their active participation in the operations of the Facility, which went beyond the typical norms of parental oversight. Plaintiffs also allege sufficient facts to support their allegations of joint venture and alter ego liability against all three Defendants. Defendants jointly operated the Facility, via personnel from all three companies, at all relevant times.

Additionally, this Court has already concluded that Plaintiffs asserted sufficient facts to state claims for private nuisance in their First Amended Complaint. In such a

---

[1] References to "¶    " are to paragraphs within the SAC, ECF No. 257.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**      1

1    circumstance, Plaintiffs' claims for public nuisance are sufficiently alleged, regardless

2    of the inclusion of facts demonstrating a special injury to each Plaintiff. *See Birke v.*

3    *Oakwood Worldwide*, 169 Cal. App. 4th 1540, 1551 (2009) (a plaintiff's asthma and

4    chronic allergies that was worsened by smoke in common areas was different in kind

5    from the health risks to the general public, and because the  plaintiff had sufficiently

6    pled a claim for private nuisance, public nuisance was also sufficiently pled); *see also*

7    ECF No. 256 pp. 9:23-10:8. However, Plaintiffs' facts satisfy the general test of special

8    injury under Cal. Civ. Code § 3493.

9        Finally, as to the wrongful death, survival and loss of consortium claims,

10   Defendants' Motion fails because Plaintiff Shan Mulligan alleged that Laura Manzo died

11   as a result of her exposure to toxic contaminants that emanated from the Facility.

12       Defendants' Motion should be denied in its entirety.

13   **II.    FACTUAL BACKGROUND**

14       **A.    General Background**

15       The Facility, which is jointly owned and operated by all three named Defendants,

16   includes an open-air pit used to compost two forms of waste from across Southern

17   California: biosolids and green materials. ¶¶ 3, 72. The finished product becomes the

18   Synagro Defendants' branded AllGro Fertilizer. ¶ 72.

19       On May 28, 2022, a large and uncontrolled fire broke out at the Facility, which

20   continued to burn for weeks, and smolder for months. ¶¶ 105-113. Though there were

21   multiple water trucks onsite, they could not be used to fight the fire because they were

22   in disrepair at the time of the fire. ¶ 107. The fire released burnt biosolids and other

23   toxins into the air, exposing hundreds of individuals, including Plaintiffs, to elevated

24   levels of burnt biosolids and other contaminants emitted from the Facility and other

25   dump sites in the area. ¶¶ 112-113.

26       The Facility is, and was during the relevant time period, required to stay within

27   receipt of materials limits prescribed by the California Public Resources Code § 44002.

28   ¶ 86. Despite this, the Facility received more than the maximum daily tonnage of 2,000

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'    2
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK

1    wet tons on multiple occasions between April 2022 and June 2022. *Id*. According to a

2    San Bernardino County Environmental Health Services report, Defendants exceeded the

3    intake limit on multiple occasions before the fire started, including multiple times the

4    week of the fire, contributing to the dangerous conditions that caused the fire. *Id*.

5    **B.    Synagro Technologies' Involvement at the Facility**

6    Synagro Technologies is a large, privately-traded company, and the parent

7    company and sole owner of Synagro-WWT, which owns and invests in waste treatment

8    and composting facilities. ¶ 14. Synagro Technologies claims it is the "largest recycler

9    of organic by-products in North America." ¶ 20. Synagro Technologies owns Synagro-

10   WWT, Inc., which owns Nursery Products. ¶ 13-14. Though Nursery Products is the

11   record owner of the Facility, Synagro Technologies pays the taxes for the Facility and

12   Synagro Technologies employees work at the Facility. ¶ 21.

13   While engaged in work at the Facility, Synagro Technologies employees used a

14   "synagro.com" email. ¶ 26. Craig Geyer, a Regional/Operations Director for Synagro

15   Technologies, was, and is, responsible for management of biosolids daily haul,

16   composting, and event operations at the Facility. ¶ 39-41.

17   Between 2018-2022 Synagro Technologies commissioned multiple groundwater

18   monitoring reports regarding the Facility. ¶¶ 46-48. Reports in 2020 and 2021 were

19   issued to Greyer. ¶¶ 46-48. Synagro Technologies Environmental Compliance Director,

20   Jeff Faust, and other Synagro Technologies employees, also communicated with

21   government agencies on behalf of the Facility in response to the Notices of Violation

22   received before and after the fire. ¶ 58.

23   In fact, Synagro Technologies employees regularly engaged in email

24   correspondence with various government officials regarding the Facility's operations.

25   E.g. ¶¶ 27-29, 58-61. When levied with penalties and fees, Synagro Technologies

26   submitted payment on behalf of the Facility. ¶ 53.

27   ///

28   ///

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**    3

### C.    Synagro-WWT's Involvement at the Facility

Synagro-WWT purchased Nursery Products in 2016. ¶¶ 13, 20. During the relevant time period, Synagro-WWT employees were just as involved at the Facility as Synagro Technologies' and Nursery Products' employees. The Site Manager of the Facility at the time of the fire was a Synagro-WWT employee, Venny Vasquez. ¶ 26. Vasquez used a "synagro.com" email, and not a Nursery Products email, to conduct Facility business. ¶¶ 26, 34, 37. At all relevant times, Vasquez oversaw day-to-day operations at the Facility. ¶ 34. This meant Vasquez worked on permit applications, commission reports, government compliance inspections, inspection reports, and other Facility business. ¶¶ 26-27, 34, 42-43. Vasquez held himself out to government officials as a Synagro employee. ¶¶ 26-27, 34. At least ten other employees of the Synagro Defendants participated in the inspection process with Vasquez.  ¶¶ 44-45.

Layne Baroldi, a Synagro-WWT employee that was the Vice President of Government Affairs and Technical Services during the relevant time period provided data to government officials regarding the waste accepted at the Facility. ¶¶ 58-59. As such, the Lahontan Regional Water Quality Control Board addressed Facility correspondence to Layne Baroldi at Synagro-WWT. ¶ 29. Further, the Lahontan Regional Water Quality Control Board Executive Officer issued a report indicating that the Facility was *owned and operated* by Synagro-WWT. ¶ 38.

### D.    Defendants' Conduct Caused a Nuisance

Because of the fire at the Facility and resulting emission of toxins and pollutants into the surrounding area, Plaintiffs experienced numerous health problems, such as but not limited to, eye irritation, skin irritation, headaches, nausea, nose irritation, throat (upper respiratory) irritation, lung (lower respiratory) irritation, dizziness, abdominal discomfort, and other related symptoms. ¶¶ 128, 206, 220. In rare instances pets died due to the exposure. ¶¶ 120, 127.

///

///

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**    4

**E.    Defendants' Conduct Resulted in a Wrongful Death**

Plaintiffs' SAC alleges that Laura Manzo perished as a result of her exposure to said contaminants from the Facility. ¶¶ 244-245, 256-257. Prior to Ms. Manzo's death, she incurred medical costs and damaged or destroyed property, among other things. ¶ 259. Her husband, Plaintiff Shan Mulligan, lost the love, affection, support and companionship of his spouse. ¶¶ 248, 270-271, 273.

## III.    PROCEDURAL POSTURE

Plaintiffs brought these consolidated actions against Defendants in San Bernardino Superior Court in the Fall of 2022. Defendants removed the actions to this Court, and following scheduling stipulations, Plaintiffs filed the FAC on December 8, 2023. ECF No. 198. Goldman Sachs filed a Motion to Dismiss the FAC on January 22, 2024 and Defendants filed a Notice of Joinder to the Motion. ECF Nos. 219, 220. Plaintiffs voluntarily dismissed Goldman Sachs on February 13, 2024. ECF No. 228.

On September 24, 2024, the Court granted in part and denied in part Defendants' Motion to Dismiss and granted Plaintiffs leave to amend. ECF No. 256. The Court found that Plaintiffs alleged sufficient facts to support their claims of trespass (¶¶ 227-240) and private nuisance (¶¶ 167-197). ECF No. 256 pp. 9:18, 9:23-10:8.

On October 15, 2024, Plaintiffs filed the SAC and on November 19, 2024, Defendants filed a Motion to Dismiss the Second Amended Complaint. ECF No. 260.

## IV.    STANDARD OF REVIEW

Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief…" Fed. R. Civ. P. 8(a). A complaint is not required to contain "detailed factual allegations" or "heightened fact pleading of specifics," but is required to plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "The plausibility standard is not akin to a 'probability requirement,'" but simply "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK    5

standard is satisfied when the plaintiff pleads factual content that "allows the court to draw the reasonable inference" that the defendant is liable for the misconduct alleged, *id*., or when the plaintiff otherwise pleads facts that "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 570.

Under Fed. R. Civ. P. 12(b)(6), a party may move to dismiss a complaint for failure to state a claim, but the court will grant such a motion only where the complaint lacks a cognizable legal theory or sufficient facts to support one. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A Fed. R. Civ. P. 12(b)(6) motion should be denied if the plaintiff's allegations "suggest that the claim has at least a plausible chance of success," and "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt v. Yelp! Inc*., 765 F.3d 1123, 1135 (9th Cir. 2014). At the pleadings stage plaintiffs enjoy the benefit of the doubt; courts must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

"Where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment." *Newman v. OneWest Bank, FSB*, No. EDCV10-0064AHMDTB, 2010 WL 797188, at *3 (C.D. Cal. Mar. 5, 2010).

## V. ARGUMENT

### A. Plaintiffs Sufficiently Alleged the Synagro Defendants Are Liable For Their Claims By Detailing Their Extensive Involvement in the Facility's Operations

The Synagro Defendants are directly liable for creating dangerous conditions at the Facility because they directly participated in its operation and directly engaged in the wrongful conduct alleged in this case. It is true that a parent is not automatically liable for the conduct of their subsidiary unless the corporate veil may be pierced. *United*

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK    6

1  States v. v. Bestfoods, 524 U.S. 51, 55 (1998). It is also true, however, that a corporate

2  parent that actively participates in and exercises control of the operations of a facility

3  may be held *directly* liable in its own right as an operator of the facility. *Id.* That is what

4  plaintiffs allege in this case.

> **1.** **The Synagro Defendants' Personnel Directly Participated in the Wrongdoing**

7  "As Justice (then-Professor) Douglas noted almost 70 years ago, derivative

8  liability cases are to be distinguished from those in which "the alleged wrong can

9  seemingly be traced to the parent through the conduit of its own personnel and

10 management…" *Bestfoods*, 524 U.S. 51, 64–65. A parent company is directly liable for

11 its own actions where "the alleged wrong can seemingly be traced to the parent through

12 the conduit of its own personnel and management" or "the parent is directly a participant

13 in the wrong complained of." *Federal Trade Commission v. Frontier Communications*

14 *Corporation*, No. 2:21-cv-04155-RGK-MAA, 2021 WL 6540379, at *4 (C.D. Cal. Oct.

15 3, 2021) (citing *Bestfoods*, 524 U.S. at 64.)

16 In *Bestfoods*, the United States Supreme Court held that CPC International Inc.

17 ("CPC"), the parent corporation of the defunct Ott Chemical Co. ("Ott"), could be liable

18 for the costs of cleaning up industrial waste generated by Ott's chemical plant because

19 CPC actively participated in and exercised control in the facility's operations during the

20 period of hazardous waste disposal. 524 U.S. at 51-53. The Court explained that under

21 the Comprehensive Environmental Response, Compensation and Liability Act, any

22 person operating a polluting facility is directly liable for the costs of cleaning up the

23 pollution, regardless of whether they are the owner, the owner's parent, a business

24 partner, or a bad actor. *Id.* at 65. Applying these principles, the Court noted there was

25 evidence that CPC participated in environmental matters and issued directives regarding

26 responses to regulatory inquiries. *Id.* at 72. The Court found these findings sufficient to

27 raise an issue of CPC's operation of the subsidiary's facility and remanded for further

28 proceedings. *Id.* at 73.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK

7

1    In applying the rule set forth in *Bestfoods*, courts also find a basis for direct
2    liability where a parent's employees are heavily involved in day-to-day operations,
3    beyond mere oversight of budgetary or financial issues. 524 U.S. at 72 (explaining the
4    critical question is whether the actions "are eccentric under accepted norms of parental
5    oversight…"). In *Frontier Communications Corporation*, for example, the Federal
6    Trade Commission and several states sued various Frontier Communications entities in
7    connection with their marketing and sale of certain internet speeds that they allegedly
8    failed to provide. *Frontier Communications Corporation*, 2021 WL 6540379, at *1. The
9    defendants disputed jurisdiction as to the parent companies, claiming they were only
10   holding companies and did not engage in the challenged activity. *Id.* at *4. The court
11   disagreed and found the plaintiffs established a prima facie case that the defendants were
12   directly responsible for the alleged misconduct. *Id.* at *4-5. The court explained, for
13   example, that one of the senior vice presidents oversaw employees who designed and
14   implemented Frontier's delivery of high-speed internet across 25 states. *Id.* at * 4 (noting
15   an employee was even confused about who technically employed him).

16   In this case, Plaintiffs have similarly sufficiently alleged that Synagro-WWT and
17   Synagro Technologies are directly liable because they directly participated in the
18   operation of the Facility, their personnel were involved in the day-to-day management
19   of the Facility, and they were directly involved in the alleged wrongs. ¶ 33. For example,
20   Plaintiffs allege that Synagro-WWT and Synagro Technologies: (1) commissioned
21   reports and testing for government entities to obtain and maintain approvals and respond
22   to complaints; (2) directly managed the facility, including overseeing what material was
23   accepted; (3) submitted permit applications for the Facility; (4) attended inspections of
24   the Facility in which government entities were present (in some cases that resulted in
25   citations); (5) received, reviewed and responded to inspection reports for the Facility (6)
26   received, reviewed, and responded to notices of violation for the Facility; (7)
27   corresponded with government officials regarding the operation and maintenance of the
28   Facility; (8) corresponded with government officials regarding notices of violation; and

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK    8

1    (9) held themselves out as having direct involvement in the violation; and (10) held
2    themselves out as having directly involvement, control, ownership or authority with
3    respect to operation of the Facility. ¶ 33.

4            These are not merely conclusory statements. In support of these allegations,
5    Plaintiffs included pages of specific examples and included excerpts from documents
6    illustrating the Synagro Defendants' control, oversight and direct participation. These
7    examples are detailed below. This Court should therefore deny the Synagro Defendants
8    Motion and find that Plaintiffs' sufficiently alleged that both Defendants are directly
9    liable for harm caused by their direct involvement and management of the Facility.

10           **2.    The Synagro Defendants Participated in the Alleged**
11                   **Wrongdoing and Oversaw Operations of the Facility**

12           As discussed above, the Synagro Defendants participated in the day-to-day
13    operations of the Facility by, among other things, submitting permit applications before
14    and during the subject incident,[2] commissioning reports related to the Facility,
15    overseeing the amount and types of waste received, managing operation of the Facility
16    and participating in Facility compliance inspections. Specifically, the Synagro
17    Defendants managed and operated the Facility through their employee and the Facility
18    Site Manager, Venny Vasquez, who held himself out to government officials as a
19    Synagro employee. ¶¶ 26-27, 34.

20           Plaintiffs further allege that on February 28, 2022, June 8, 2022 and June 24, 2022,
21    the Synagro Defendants submitted operational permit applications for the Facility
22    including to the Mojave Desert Air Quality Management Department. ¶¶ 39-41. At least
23    one of these applications was signed by Craig Geyer, the Regional/Operations Director
24    for Synagro Technologies who is responsible for management of Synagro's biosolids
25    daily haul. ¶¶ 39-41. On June 24, 2022, Craig Geyer signed another permit application
26    as the "Land Owner or Agent." ¶ 41. Plaintiffs further allege that in 2020, 2021, and

27    ───────────────
28    [2] Defendants' Request for Judicial Notice demonstrates why discovery is needed in this
     case. Defendants are in possession of ample discoverable information that support
     Plaintiffs' claims.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**                    9

2022, Synagro Technologies commissioned groundwater monitoring reports for the Facility that were issued to Synagro Technologies' employees and then sent to the Lahontan Regional Water Quality Control Board by Synagro Defendants. ¶¶ 46-48. Similarly, from 2018 to 2022, Synagro-WWT participated in multiple compliance inspections with government officials and received multiple Facility inspection reports. ¶¶ 42 – 45.

The Synagro Defendants were also directly involved in the alleged wrongdoing. Government records indicate that Synagro Technologies managed the Facility's biosolids daily haul (¶ 40) and that Synagro-WWT corresponded with the Water Board regarding the types of waste received by the Facility.[3] ¶ 59. This is significant because Plaintiffs allege that Defendants created dangerous conditions at the Facility by accepting excessive waste and unpermitted forms of waste. ¶ 78-79, 88, 101. "Government records also indicate that Synagro Technologies, Inc. attempted to pay and/or paid penalties and fees on behalf of the Facility." ¶ 53. Pursuant to *Bestfoods,* this degree of involvement by the Synagro Defendants goes far beyond the norms of parental oversight and supports direct liability in this case.

### 3.    Personnel Employed by the Synagro Defendants Directly Oversaw, Managed and Operated the Facility

The Synagro Defendants' personnel were also extensively involved in the Facility's management and aware of the unlawful conduct at issue in this case. Synagro Defendants managed and operated the Facility through their employee and the Facility site Manager Venny Vasquez, as well other employees such as Craig Geyer, Layne Baroldi, Lonny Terrell and Jeffrey Faust. ¶ 26. At all relevant times, Mr. Vasquez oversaw day-to-day operations, exchanged emails regarding the Facility's operation and communicated with government officials. ¶ 34. Mr. Vasquez also used a Syngro email address, a Synagro signature in his emails and wore a Synagro uniform. ¶¶ 34, 37.

///

---

[3] Plaintiffs allege that Defendants received impermissible forms of waste.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK

10

1    Mr. Vasquez also repeatedly participated in government compliance inspections

2  of the Facility on October 4, 2018, May 14, 2020, February 17, 2022, and March 1, 2021,

3  several of which found violations. ¶¶ 42-43. The California State Water Resources

4  Control Board issued corresponding Compliance Inspection Reports to Synagro-WWT,

5  Inc. for these inspections. ¶¶ 42-43. At least ten (10) other employees of Synagro

6  Defendants also participated in compliance inspections in 2022. ¶¶ 44-45. According to

7  a County of San Bernardino Compostable Materials Handling Operation and Facility

8  Inspection Report, Synagro's Regional Safety Manager, Lonny Terrell also participated

9  in a County inspection of the Facility on April 20, 2022. *Id.* These compliance

10  inspections revealed violations and wrongdoing that Plaintiffs allege proximately caused

11  an uncontrolled fire at the Facility and harm Plaintiffs. ¶¶ 55, 85-93, 105-106, 146-147,

12  150.

13    Synagro Defendants' personnel (including employees of both Synagro

14  Technologies and Synagro-WWT) were also involved in responding to violations,

15  corresponding with government agencies and settling citations. ¶¶ 49-51, 55, 58-61.

16  Notably, these employees' roles were significant, including the Vice President of

17  Government Affairs and Technical Services/Synagro-WWT, Inc. (Layne Baroldi),

18  Regional/Operations Direct for Synagro Technologies (Craig Geyer), Synagro employee

19  and Facility Site Manager (Venny Vasquez), and the Environmental Compliance

20  Director for Synagro Technologies (Jeff Faust). ¶ 58. These employees were included

21  on emails regarding litter clean-up efforts at the Facility in May 2022. ¶ 50.

22    Compliance citations and demands for payment were also repeatedly sent to

23  Synagro employees including on May 20, 2019, April 21, 2020, April 29, 2020, January

24  29, 2021, March 9, 2021, January 6, 2022, February 10, 2022, February 11, 2022, June

25  1, 2022 and July 14, 2022. ¶ 55. In addition, Synagro-WWT employee Layne Baroldi

26  provided data to government officials regarding the waste accepted at the Facility. ¶ 59.

27  This degree of involvement with government officials evidences Synagro Defendants'

28  direct oversight and control over the Facility's operations.  As further evidence of their

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK    11

1  oversight, Synagro personnel were also involved in a February 15, 2022 Settlement

2  Agreement to address violations at the Facility. ¶ 58. These are not typical acts of

3  parental influence, such as monitoring a subsidiary's performance or supervising budget

4  decisions. *Bestfoods*, 524 U.S. 51 at 71. Rather, this involvement goes to the crux of

5  plaintiffs' allegations in this case – that Defendants' violations and failure to maintain

6  the Facility in a safe condition resulted in a fire that harmed plaintiffs. ¶ 78, 129, 147.

7  Given the conduct detailed herein, Plaintiffs have sufficiently pled directly liability by

8  alleging that the wrongdoing in this case (i.e. accepting improper/excessive waste) can

9  be traced to the Synagro Defendants' personnel and that the Synagro Defendants' direct

10  involvement in the Facility's operation and the violations at issue.

11  ### 4.  Defendants' Challenges to Direct Liability are Without Merit

12  Defendants' conclusory challenges to direct liability are without merit.  First,

13  Plaintiffs did not allege—as Defendants claim—that Nursery Products was the *sole*

14  owner and operator of the Facility. To the contrary, Plaintiffs alleged that "Synagro

15  Technologies owns and/or pays taxes for some of the Property." ¶ 21. Plaintiffs further

16  alleged that "Synagro-WWT, Inc. and Synagro Technologies, Inc. managed, controlled,

17  operated and oversaw the Nursery Products Hawes Composting Facility…" as further

18  detailed above. ¶ 33.

19  Second, the cases cited by Defendants are distinguishable. For example, in

20  *Chubchai v. AbbVie, Inc.*, 599 F.Supp.3d 866, 873 (N.D. Cal. 2022), the plaintiffs

21  alleged the court had jurisdiction over AbbVie (the parent company) because AbbVie

22  merged with Zeltiq, Allergan plc and Allergan Inc. (the subsidiaries). Unlike this case,

23  there was no allegation that AbbVie was directly involved in operations and the plaintiffs

24  did not satisfy the elements for de facto merger. *Id.* at 874.  Similarly, in *Rodriguez v.*

25  *JP Morgan Chase & Co.*, 809 F.Supp.2d 1291, 1300 (S.D. Cal. 2011), plaintiffs brought

26  mortgage claims against JP Morgan Chase & Co, the parent of its loan servicer. The

27  court granted the defendant's motion to dismiss because the complaint contained "no

28  allegations explaining why JP Morgan Chase & Co. should not be treated as a separate

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**

12

1  legal entity from its two subsidiaries" or indicating the parent's direct involvement. *Id.*

2  *Rodriguez* stands in stark contrast to this case, where Plaintiffs detailed numerous

3  examples of Synagro Defendants' involvement in the Facility's operations.

4  Third, Defendants claim that allegations regarding the contents of government

5  records are self-serving and therefore improper.  The public records included

6  demonstrate that Synagro-WWT and Synagro Technologies' employees had direct

7  involvement in managing the Facility, ordering testing and engaging with government

8  officials concerning its operation. This is not the fault of Plaintiffs nor grounds for

9  dismissal. Given the foregoing, the Court should deny Defendants' Motion because

10  Plaintiffs have plausibly established the Synagro Defendants' direct involvement in the

11  alleged wrongdoing and the Facility's operation.

12  **B.    Plaintiffs Sufficiently Allege the Synagro Defendants are Indirectly**

13  **Liable**

14  The Synagro Defendants must remain in this case because Plaintiffs have

15  sufficiently alleged they are directly liable for Plaintiffs' injuries. Plaintiffs have also

16  sufficiently alleged that, together with Nursery Products, the Synagro Defendants

17  operated the facility as a joint venture and as the alter egos of one another.

18  **1.    Plaintiffs' SAC Sufficiently Pleads That Defendants Were**

19  **Operating a Joint Venture.**

20  Plaintiffs alleged sufficient facts to establish their theory of joint venture against

21  all three Defendants. A plaintiff has sufficiently alleged joint venture when three

22  elements are satisfied: "the members must have joint control over the venture (even

23  though they may delegate it), they must share the profits of the undertaking, and the

24  members must each have an ownership interest in the enterprise." *Unruh-Haxton v.*

25  *Regents of Univ. of California*, 162 Cal. App. 4th 343, 370 (2008).

26  Plaintiffs allege that Defendants were operating a joint venture because (a) all

27  three Defendants share ownership interest in the composting business; (b) all three

28  Defendants have joint control over the business; (c) all three Defendants share the profits

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK

13

1    and losses of the business; and (d) an implied or express joint venture agreement was
2    formed by Defendants' conduct. ¶ 18.

3         To support these allegations, Plaintiffs have clearly alleged that Defendants
4    exercise *joint* control over the Facility. A Synagro employee is the Site Manager of the
5    Facility. ¶¶ 18, 26. Several other Synagro Technologies and Synagro-WWT employees
6    are included on emails with government officials regarding the Facility and its
7    violations. *Id*. These employees were also engaged in correspondence about the facility;
8    one Facility report was "Prepared for Synagro Technologies" specifically (¶¶ 27-28) and
9    letters regarding the delivery of waste to the Facility were addressed to "Layne Baroldi,
10   Synagro WWT, Inc.," demonstrating that employees of each Defendant were engaged
11   operations at the Facility. ¶ 29. Clearly, the Synagro Defendants, together with Nursery
12   Products, jointly controlled the business operations at the Facility during the relevant
13   time period.

14        Further, all Defendants share the profits of the undertaking, the Facility. ¶ 18.
15   Synagro Technologies owns Synagro-WWT, Inc., which owns Nursery Products. ¶¶ 13-
16   14. The Facility collects biosolids, green waste, and other materials from around
17   Southern California to compost and then sell as the Synagro Defendants' branded AllGro
18   Fertilizer, for a profit. ¶ 72. All three Defendants share in the success of profits and the
19   risk of losses.

20        Finally, all Defendants share an ownership interest in the composting facility. ¶
21   18. Defendants incorrectly state that Plaintiffs Nursey Products as the "*sole*" owner of
22   the Facility. Mot. at 7:24-27. Plaintiffs allege Nursery Products was the record owner of
23   the Property at the time of the fire. ¶¶ 12, 21. However, Synagro Technologies pays taxes
24   on the property, sharing the ownership obligations with Nursery Products, which it also
25   owns. ¶ 21.

26   ///
27   ///
28   ///

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**        14

## 2. Plaintiffs Adequately Allege That the Synagro Defendants and Nursery Products Acted as Alter-Egos

As explained above, Plaintiffs have alleged sufficient facts to demonstrate Defendants' shared interest and unity in operating and profiting from the Facility. Plaintiffs also allege that Defendants acted in a dangerous manner and failed to prevent the foreseeable fire, which caused Plaintiffs' injuries. Under these circumstance, it would be unjust to allow the Synagro Defendants to evade liability by hiding behind layers of corporate structure.

A plaintiff must allege facts supporting two conditions to invoke the alter ego doctrine: (1) plaintiff must allege facts supporting "a unity of interest and ownership between the corporation and its equitable owner," and (2) plaintiff must allege facts supporting "an inequitable result if the acts in question are treated as those of the corporation alone." *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 538 (2000); *Gerritsen v. Warner Bros. Ent. Inc*., 116 F. Supp. 3d 1104, 1136 (C.D. Cal. 2015). Plaintiffs have met that burden here.

Plaintiffs allege that a unity of interests and ownership existed among all three Defendants in relation to their operation of the Facility. ¶ 23. Specifically, Plaintiffs allege the following:

The Facility was operated by *employees of all three entities*. ¶¶ 23-24, 26-30. The Site Manager of the Facility is a Synagro employee. ¶ 26. While conducting business for the Facility, the employee used a "synagro.com" email address with a signature line including a link to the "synagro.com" website. *Id*. Employees of the Synagro Defendants actively participated in tasks that would normally only be performed by employees of the owner of the Facility, as opposed to independent contractors or vendors. For example, employees of the Synagro Defendants submitted operational permit applications for the Facility. ¶¶ 30, 39-41. These permits were signed by the Regional/Operations Director for Synagro Technologies, who in at least one permit application identified himself as the "Land Owner or Agent" of the Facility. ¶¶ 30, 39-

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

41. Employees of all three Defendants participated in commissioning monitoring reports and multiple compliance inspections for the Facility. ¶¶ 27-29, 42 – 48. These facts demonstrate that Defendants maintained a unity of ownership.

Plaintiffs also allege that Defendants shared a unity of interest. ¶ 23. "A plaintiff can plead a number of different factors to show unity of interest. 'Among the factors to be considered in applying the doctrine are […], *use of the same offices and employees*, […].' […] This list is non-exclusive, and California courts have relied on a host of other factors in finding alter ego liability as well." *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1137 (C.D. Cal. 2015) (emphasis added) (internal citations omitted*)*. In addition to the facts referenced above regarding Synagro employees' involvement in compliance and holding themselves out as employees of the Facility, several of the Synagro Defendants' employees regularly communicated with government agencies on behalf of the Facility. ¶¶ 27-29. Synagro employee Vasquez managed operations of the Facility from the Facility, not from a separate Synagro office or property. ¶ 34.

On these facts, an unjust result would occur if Plaintiffs claims proceed against Nursery Products alone. *See Sonora Diamond Corp.*, 83 Cal. App. 4th 523, 539 ("The alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form."). Synagro Technologies is a large, privately-traded company which owns and invests in waste treatment and composting facilities. ¶ 14. Synagro Technologies is the "largest recycler of organic by-products in North America." ¶ 20. Since purchasing Nursery Products in 2016, employees of the Synagro Defendants have controlled operations at the Facility. ¶¶ 20, 23. It would be inequitable to ignore the Synagro Defendants' substantial role in operating the Facility and in the events that resulted in the fire that harmed Plaintiffs.

Finally, alter ego is primarily a factual question that should not be disposed of at this stage, provided Plaintiffs have sufficiently alleged the required elements, as they have here. *See e.g.* ¶¶ 23-30 (alleging alter ego and supporting facts); *JPV I L.P. v.*

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

1   *Koetting* (2023) 88 Cal. App. 5th 172, 195 ("There is no litmus test to determine when

2   the corporate veil will be pierced; rather the result will depend on the circumstances of

3   each particular case."); *Sonora Diamond Corp.*, 83 Cal. App. 4th 523, 538–39 (setting

4   out several factors courts consider to determine alter ego liability).

5       The Court should deny Defendants' motion and allow Plaintiffs to proceed with

6   discovery against each Defendant.

7       **C.    Plaintiffs Sufficiently Pled Their Claims for Public Nuisance**

8       Plaintiffs have sufficiently pled their public nuisance claims. Generally, "[a]

9   public nuisance is one which affects at the same time an entire community or

10  neighborhood, or any considerable number of persons, although the extent of the

11  annoyance or damage inflicted upon individuals may be unequal." Cal. Civ. Code §

12  3480.

13      Defendants cite *Koll-Irvine Ctr. Prop. Owners Ass'n v. Cnty. of Orange*, for the

14  proposition that the harm alleged must be "different in kind and not merely in degree

15  from that suffered by other members of the public." 24 Cal. App. 4th 1036, 1040 (1994);

16  *see* Mot. at 14:3-8; *see also* Cal. Civ. Code §3493. Plaintiffs allegations meet the *Koll-*

17  *Irvine Ctr.* standard. The fire caused several Plaintiffs to suffer from aggravated and/or

18  exacerbated existing health conditions, such as asthma. *See Birke*, 169 Cal. App. 4th

19  1540, 1550-1551 (finding the impact of smoking in common areas of apartment complex

20  on a child's asthma and chronic allergies was different in kind from the risks to the

21  general public, satisfying the special injury requirement). Additionally, Plaintiffs who

22  did not suffer from the aggravation of a preexisting condition suffered from unique

23  injuries, such as varying types of eye, skin nose, and throat irritation, and varying

24  severity and frequency of headaches and nausea. ¶¶ 128, 206, 220; *see Lind v. City of*

25  *San Luis Obispo*, 109 Cal. 340, 344–45 (1895) ("[A]n injury to private property, or to

26  the health and comfort of an individual, is *in its nature special and peculiar*, and *does*

27  *not cause a damage which can properly be said to be common or public*, however

28

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**    17

1    numerous may be the cases of similar damage arising from the same cause.") (emphasis
2    added).

3        Further, some Plaintiffs did not have access to central or filtered air, which
4    required them to keep doors and windows open during the incident, subjecting them to
5    increased exposure to the toxins in their homes. ¶ 121. Other Plaintiffs suffered the
6    unique and harrowing loss of pets due to the exposure. ¶¶ 120, 127. Each Plaintiff in this
7    case suffered a unique harm that was not suffered by all other members of the public.

8        However, there is no requirement that the Plaintiffs in this case establish a  special
9    injury – because Plaintiffs have already sufficiently pled claims for private nuisance and
10   trespass. *See Lind*, 109 Cal. 340, 343–45 (when a private right is violated, such as a
11   trespass and a private nuisance, the harm "is not common to the public generally");
12   *Birke*, 169 Cal. App. 4th 1540, 1551 (a sufficiently pled private nuisance claim meets
13   the requirements for a claim of public nuisance); *Venuto v. Owens-Corning Fiberglas*
14   *Corp.*, 22 Cal. App. 3d 116, 124–25 (Ct. App. 1971) (whether the public nuisance
15   alleged is also a private nuisance is important to determine how Cal. Civ. Code § 3493
16   should be applied, considering the principle that a private nuisance is a civil wrong based
17   on disturbance of rights in land while a public nuisance is not dependent upon such a
18   disturbance but upon an interference with the rights of the community at large); *see also*
19   Prosser on Torts (3d ed.) pp. 608-611 and fn. 91 at p. 611).

20       As the *Birke* Court explains, "[W]ith respect to the special injury requirement,
21   [...] a legion of other authorities recognize that, *when the nuisance is a private as well*
22   *as a public one, there is no requirement the plaintiff suffer damage different in kind* from
23   that suffered by the general public." 169 Cal. App. 4th 1540, 1551 (emphasis added).
24   Here, Plaintiffs have successfully alleged a claim for private nuisance. ¶¶ 167-197. This
25   Court denied Defendants' motion to dismiss the claim, stating "Plaintiffs allege
26   sufficiently the emission of contaminants from the fire interfered with their free use and
27   comfortable enjoyment of their properties. [...] This is sufficient to state a claim for
28   private nuisance." ECF No. 256 pp. 9:23-10:8.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK

18

Nonetheless, Plaintiffs have sufficiently alleged harms that are different in kind, not merely degree. Defendants' Motion to Dismiss Plaintiffs' Public Nuisance claim should be denied.

### D. Plaintiff Shan Mulligan Stated Claims for Wrongful Death and Loss of Consortium Based on Laura Manzo's Exposure to Harmful Toxins from the Facility

Defendant claims—for the first time—that Plaintiff Shan Mulligan's wrongful death and survivor claims fail because Plaintiff did not adequately allege how Laura Manzo died and Plaintiff was required to include expert opinions and a detailed summary of Mrs. Manzo's care in the Complaint.[4]  These contentions are without merit.

Federal Rule of Civil Procedure 8(a) provides that a "pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." The pleading must allege facts that would be sufficient to show that a claim for relief is plausible on its face. *See Twombly*, 550 U.S. 544, 570. A complaint need not include detailed factual allegations but must provide more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555. The parties agree that "[t]he elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages." *Lattimore v. Dickey*, 239 Cal. App. 4th 959, 968 (2015); *Noriega v. County of San Bernardino*, No. ED CV24-00170 JAK (DTBx), 2024 WL 4799131, at *5 (C.D. Cal. Sept. 19, 2024).

In comparison, in a survival action, the decedent's estate may recover on behalf of the decedent for injuries that the decedent sustained during life. *Estate of Wilson by and through Jackson v. County of San Diego*, No. 20-cv-0457-BAS-DEB, 2022 WL 789127, at *24. "[U]nlike a wrongful death action, a survival action is a cause of action that existed while the decedent [was] alive and survives the decedent." *Id.* The damages recoverable in a survival action are "the loss or damage that the decedent sustained

---

[4] Because Defendants' arguments as to Plaintiff's wrongful death and survival claims are largely identical, Plaintiff addresses them collectively.

before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived. Cal. Code Civ. § 377.34.

Applying these standards, the *Noriega* court found that the plaintiff adequately stated a claim for wrongful death where he alleged that the decedent was harmed while in the custody of the defendant County, that the County failed to take reasonable measures to address the decedent's medical needs, and the lack of medical care proximately caused the decedent's death, resulting in the loss of love, comfort and companionship for the plaintiff. *Id.* at *5. Regardless of the precise cause of the decedent's death, the court rejected the defendant's argument that the allegations were too conclusory and found the allegations sufficiently specific to state a claim for relief plausible on its face. *Id.* at *2, 5. The same is true here.

Plaintiffs allege that Defendants negligently operated the Facility, created dangerous conditions at the Facility, violated numerous statutes and negligently allowed an uncontrolled fire to burn at the Facility, which emitted harmful toxins, pollutants and chemicals into the surrounding area and caused physical injury to the surrounding community. ¶¶ 145-155. Plaintiffs further allege that due to Defendants' misconduct and the Fire, the Facility emanated contaminants for at least two months that caused the neighboring communities to become ill and killed beloved pets. ¶¶ 2, 119-120, 127-128, 131. As to the decedent Laura Manzo, Plaintiff and husband, Shan Mulligan, specifically allege that Laura Manzo consequently perished on July 30, 2022 as a result of her exposure to said contaminants from the Facility. ¶¶ 244-245, 256-257. As a direct and proximate result, Plaintiff Mulligan lost Ms. Manzo's love, affection, support and companionship. ¶ 248. In addition, Ms. Manzo suffered damages prior to her death including medical costs and damaged property, among other things. ¶ 259. In accordance with *Noriega*, these allegations are sufficient to state a plausible claim for relief.

Finally, Defendant fails to cite any authority for its suggestion that Plaintiff is required to include a summary of medical treatments or expert testimony in the complaint. This information would be the subject of discovery and expert depositions

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK

20

1    and is premature at this stage. In fact, even though discovery has not yet technically

2    commenced, all Plaintiffs are currently responding to discovery and providing medical

3    records that detail their injuries, medical issues and treatment.

4        **E.**    <u>**Plaintiff Shan Mulligan Sufficiently Stated a Claim for Loss of**</u>

5            <u>**Consortium**</u>

6        "'[A] loss of consortium cause of action has four elements: (1) a valid and lawful

7    marriage between the plaintiff and the person injured at the time of the injury; (2) a

8    tortious injury to the plaintiff's spouse; (3) loss of consortium suffered by the plaintiff;

9    and (4) the loss was proximately caused by the defendant's act.'" *Graveline v. Select*

10   *Comfort Retail Corp.*, 871 F. Supp. 2d 1033, 1039 (E.D. Cal. 2012) (citation omitted)].

11   Plaintiff satisfies these elements.

12       In particular, Plaintiff Mulligan alleges that he was lawfully married to Laura

13   Manzo at the time of the incident, that his spouse was exposed to toxins as a result of

14   Defendant's Facility and suffered injuries and death, and that he suffered loss of support

15   and love as a result. ¶¶ 270-271, 273. Defendant again claims Plaintiff failed to establish

16   a causal link between Defendant's misconduct and Manzo's passing two months after

17   the fire.  To the contrary, Plaintiff specifically alleges that the fire at Defendants' Facility

18   commenced on approximately May 28, 2022 and emitted contaminants and toxins into

19   the surrounding area causing injury to people for months. ¶ 126 Plaintiffs further allege

20   that as a direct and proximate result of her exposure to said contaminants, Laura Manzo

21   subsequently died on July 30, 2022. ¶ 271-272. These allegations are sufficient.

22       Defendant next erroneously contends that Plaintiff's claim must be dismissed in

23   its entirety because damages are limited to the period before the victim's death.  While

24   damages may be limited, this is not grounds for total dismissal of the claim. Moreover,

25   the loss of consortium allegations in the complaint are not limited to the time period after

26   Laura Manzo's passing. *See* ¶ 273 ("…Mulligan suffered and continues to suffer the loss

27   of support, service, love, companionship, affection, society, intimate relations…").

28   Plaintiff Mulligan adequately stated a claim for loss of consortium.

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**       21

# VI. <u>CONCLUSION</u>

Plaintiffs respectfully request the Court deny Defendants' Motion in its entirety, or in the alternative grant Plaintiffs leave to amend.

Dated: January 17, 2025          **COTCHETT, PITRE & McCARTHY, LLP**


By:  _/s/ Theresa E. Vitale_
       GARY A. PRAGLIN
       KELLY W. WEIL
       THERESA E. VITALE
       CAILIN M. RUFF
       *Attorneys for Plaintiffs*

Dated: January 17, 2025          **SCHACK LAW GROUP**


By:  _/s/ Shannon F. Nocon_
       ALEXANDER M. SCHACK
       NATASHA N. SERINO
       SHANNON F. NOCON
       *Attorneys for Plaintiffs*

Dated: January 17, 2025          **LAW OFFICES OF GREGORY J. HOUT**


By:  _/s/ Gregory J. Hout_
       GREGORY J. HOUT
       *Attorney for Plaintiffs*

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**          22

1

## SIGNATURE ATTESTATION

2          Pursuant to Local Rule 5-4.3.4(a)(2)(i), I, Theresa E. Vitale, attest that all other

3   signatories listed, and on whose behalf this filing is submitted, concur in the filing's

4   content and have authorized the filing.

5

6   Dated: January 17, 2025              /s/   *Theresa E. Vitale*
                                          Theresa E. Vitale
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,986 words, which complies with the word limit of L.R. 11-6.1.

Dated: January 17, 2025                    */s/ Theresa E. Vitale*
                                           Theresa E. Vitale

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
SECOND AMENDED COMPLAINT; LEAD CASE NO. 5:22-cv-01866-FLA-SHK**                    24